**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles C. SARRIS, III,**
**Defendant–Appellant.**

**No. 80–3216**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Dec. 19, 1980.

Virgil M. Wheeler, Jr., New Orleans, La., for defendant–appellant.

C. Michael Hill, Asst. U.S. Atty., Baton Rouge, La., for plaintiff–appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

PER CURIAM:

Appellant, Charles C. Sarris, III, was indicted for conspiracy to conduct an illegal gambling business under 18 U.S.C.A. § 371 and for the substantive offense of conducting an illegal gambling business under 18 U.S.C.A. § 1955. Sarris was tried by a jury, convicted on both counts and sentenced. On this appeal, Sarris raises two principal points of error. First, he contends that the jury selection process employed in his case denied him his right to a fair trial. Second, he contends that the trial court's failure to give a cautionary instruction concerning the statements of a co–indictee testified to by a Special Agent of the Federal Bureau of Investigation constituted "plain error". Because we find these contentions unpersuasive, we affirm.

*Jury Selection*

Sarris contends that the jury selection process employed in his case denied him a fair trial. In this regard, Sarris complains of the fact that he was not provided with a jury list prior to the morning of trial and that the trial court required the defense and prosecution to simultaneously exercise their peremptory challenges. Neither of these practices, under the circumstances of this case, denied Sarris a fair trial.

Because the jury list was withheld until the morning of trial and then included only the names of potential jurors, Sarris argues that he was not given a fair opportunity to analyze the individuals on the venire panel. This Court has previously held that there is no error in withholding the list of prospective jurors until the morning of trial. See

United States v. Scallion, 533 F.2d, 903, 913–14 (5th Cir. 1976), cert. denied sub nom. Drane v. United States and Jenkins v. United States, 429 U.S. 1079, 97 S.Ct. 824, 50 L.Ed.2d 799 (1977); United States v. Clarke, 468 F.2d 890, 891 (5th Cir. 1972). Furthermore, it is evident that Sarris was afforded adequate opportunity to analyze the veniremen. While the transcript of the argument of the voir dire examination is not included in the record, the transcript of the argument on the issue before the Trial Court includes remarks by the Trial Judges as to the process to be employed in voir dire:

Insofar as the jury venire list, which has been furnished to counsel, it has been the practice in this Court for many years to furnish the jury venire list about fifteen minutes before the Court begins the jury selection process. The jury venire list furnished contains only names. It contained no other background information for counsel. We will, during the jury voir dire, of course, elucidate from each potential juror his background, age, occupation, et cetera, and I believe that counsel will have a full opportunity to find out who these people who are going to be serving on this jury are.

Of course when the Court concludes voir dire, if any counsel has any additional questions to suggest, you may of course do that, and we will give you an opportunity to do that.

Sarris does not contend that this voir dire procedure, as outlined by the Judge, was not fully complied with in his trial. We conclude that this procedure afforded Sarris a fair opportunity to assess the potential jurors in his case consistent with notions of a fair trial.

We further find Sarris' complaints as to the simultaneous exercise of peremptory challenges by the prosecution and defense to be without merit. This Court has held that the method employed in selecting jurors is within the sound discretion of the trial court. United States v. Durham, 587 F.2d 779, 801 (5th Cir. 1979).

*Cautionary Instruction*

■ Sarris next contends that the trial court committed plain error in not cautioning the jury regarding the value of statements made by a co–indictee, turned informant, testified to by a Special Agent for the Federal Bureau of Investigation. Sarris argues that this cautionary instruction was required to cure what he contends was a highly prejudicial instruction given to the jury by the Judge which "blessed and anointed the prosecution's case". The instruction of which Sarris complains was as follows:

Now, during the course of this trial, there have been inferences, testimony, and suggestions made that the government was assisted in the case by a confidential informant. There is nothing illegal or indeed even unethical about the government's use of a confidential informant. Now, the use of informants is an accepted tool of law enforcement agencies, such as the Federal Bureau of Investigation.

Viewing the jury instructions as a whole, we do not believe that the instructions, or lack of instructions, constituted plain error. See, United States v. Abravaya, 616 F.2d 250, 251 (5th Cir. 1980); United States v. Fowler, 605 F.2d 181, 184 (5th Cir. 1979). Although we are unable to review the actual testimony of the Special Agent for the FBI as to the statements made by the informant,[1] it is uncontroverted that the informant himself did not appear on the stand. We are not convinced that a cautionary instruction concerning the credibility of statements attributed to an individual who did not appear at trial would have assisted the jury in a fair evaluation of this case. Furthermore, we are not convinced that the

---

1. Sarris states that although he could not qualify as indigent, he was financially unable to provide a transcript of the record.

instruction of which Sarris complains in anyway expressed a view concerning the credibility of any statement made by the informant but rather only informed the jury as to the practical role of informants in cases of this type.[2] Finally, it is clear that the trial court did give an adequate general instruction as to the assessment of the credibility of witnesses.[3]

AFFIRMED.

2. This Court has stated that it is the nature of certain crimes, including gambling, to often be undetectable absent the use of government informants. *See, United States v. Timberlake,* 559 F.2d 1375, 1378, n.7 (5th Cir. 1977).

3. The following is an excerpt from the trial court's instruction to the jury:

Now, you must consider all of the evidence, but this does not mean that you must accept all of the evidence as being true or accurate. You are the sole judges. You and you alone are the judges of the credibility, or the believability, if the will, of each witness, as well as the weight to be given his testimony.

In weighing the testimony of a witness, you should consider his relationship to the government, or to any defendant. You should consider his interest, if any, in the outcome of this case. You should consider his manner of testifying, his opportunity to observe or acquire the knowledge that he testified about. You should consider his candor, openness, fairness and intelligence, and you should also consider the extent to which he has been supported, or contradicted by other creditable evidence.
. In short, you may accept or reject the testimony of any witness who appeared in this courtroom, either in whole or in part.