**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Johnnie T. WARREN, Defendant–Appellant.**

**No. 91–10527.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1992.

Decided Jan. 27, 1993.

■■■■■■■■

---

Rustam A. Barbee, and Birney B. Bervar, Asst. Federal Public Defenders, Honolulu, HI, for defendant-appellant.

Edward H. Kubo, Jr., Asst. U.S. Atty., Honolulu, HI, for plaintiff-appellee.

Before: BROWNING, NORRIS and REINHARDT, Circuit Judges.

**JAMES R. BROWNING, Circuit Judge:**

Johnnie Warren appeals his convictions for first degree murder (18 U.S.C. § 1111), attempted murder (18 U.S.C. § 1113), and assault with a deadly weapon (18 U.S.C. § 113). We reverse Warren's murder conviction.

## I.

On January 5, 1991, 19–year–old Johnnie Warren and a group of his friends were drinking beer at the home of one of the group when Derek Johnson, another friend, arrived and reported a man had accosted Warren's sister at a store on a local army base, Schofield Barracks. Warren and the others set out in search of the man. Several hours later, they confronted William Canady and Rogers Watson near the Paradise Club, an enlisted men's club on the Schofield base. Warren stabbed Canady once in the chest and a second time in the back as Canady collapsed. Warren then stabbed Watson, threw the knife into the bushes, and fled. Canady died from his wounds; Watson recovered.

The jury convicted Warren on all charges. The court sentenced Warren to life without parole for the murder of Canady, 20 years for the attempted murder of Watson, and five years for assault with a deadly weapon.

## II.

Warren asserts the government failed to prove, and the court failed to instruct the jury, that the offense was committed within the special maritime and territorial jurisdiction of the United States.[1] Because Warren did not object at trial we review for plain error, and will reverse only in " 'exceptional circumstances.' " *United States v. Hegwood*, 977 F.2d 492, 495 (9th Cir. 1992) (quoting *United States v. Marsh*, 894 F.2d 1035, 1039 (9th Cir.1989)); *see generally* Fed.R.Crim.P. 52(b).[2]

 A district court "may determine as a matter of law the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact." *United States v. Gipe*, 672 F.2d 777, 779 (9th Cir. 1982) (citing *United States v. Jones*, 480 F.2d 1135, 1137 (2d Cir.1973)). The district court did not instruct the jury that Schofield Barracks was within the special territorial jurisdiction of the United States as a matter of law, and also failed to instruct the jury that to convict the jury must find beyond a reasonable doubt that the crime was committed on Schofield Barracks. The court's failure "to charge a necessary element of the offense generally is plain error." *United States v. King*, 587 F.2d 956, 965 (9th Cir.1978); *see also United States v. Aguon*, 851 F.2d 1158, 1168 (9th Cir. 1988) (en banc) (failure to charge on "vital" element is plain error).[3] However, if such an error is harmless then, by definition, it does not affect a defendant's substantial rights and is not reviewable as plain error. *See* Fed.R.Crim.P. 52. "The failure to instruct on every element of an offense is harmless error only if the omitted element is undisputed, and, therefore, its omission could not possibly have been prejudicial." *King*, 587 F.2d at 966; *see also Hennessy*

---

**1.** 18 U.S.C. §§ 113, 1111 & 1113 require that the crime be committed "within the special maritime and territorial jurisdiction of the United States," which includes:

> Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

18 U.S.C. § 7(3).

**2.** Warren objected to the Court's instruction on the elements of first degree murder under § 1111, but not because the instruction failed to deal with the locus of the crime. Warren proposed an instruction which also failed to include the jurisdictional element of the offense. Fed.R.Crim.P. 30 requires a party to "stat[e] distinctly the matter to which the party objects and the grounds of the objection."

**3.** The government notes the court's instruction was based on 9th Cir.Crim.Jury Instr. 8.24A (1989), which does not include a charge on the location of the offense. Use of a model jury instruction does not preclude a finding of error. *See Hegwood*, at 495–96.

*v. Goldsmith,* 929 F.2d 511, 514–16 & n. 3 (9th Cir.1991) (failure to instruct on element of crime may be harmless beyond a reasonable doubt).

In this case, the prosecution presented uncontroverted testimony that the crime occurred outside the Paradise Club, that the Paradise Club was an enlisted men's club at Schofield Barracks, and that Schofield Barracks was a United States Army base in Hawaii. An army base is within the special jurisdiction of the United States as defined in 18 U.S.C. § 7(3). Warren made no attempt to impeach this testimony and offered no contrary evidence. Indeed, in questioning a witness Warren's counsel referred on the record to the fact that the Paradise Club was located on the Schofield base. There is no reasonable possibility that failure to instruct the jury on the jurisdictional element of the offense affected the verdict. *United States v. Rubio–Villareal,* 967 F.2d 294, 296 n. 3 (9th Cir. 1992) (en banc); *see also United States v. Cubean,* 611 F.2d 257, 258 (8th Cir.1979) (failure to instruct on jurisdiction was harmless because there was no prejudice to defendant where issue was proved beyond a reasonable doubt and was uncontroverted at trial). Therefore, the judge's failure to instruct the jury that it must find beyond a reasonable doubt that the crime was committed on the Schofield Barracks was not plain error.

### III.

Warren was indicted on January 30, 1991; trial was set for April 2. On March 26, 15 days before the Speedy Trial Act deadline for commencement of trial would be reached, the court ordered a competency examination and hearing, and tolled the running of time under the Act. Warren

was examined at a federal facility and found competent. At a competency hearing on May 10 the court ruled Warren was competent to stand trial, and granted the defense's motion for a continuance. Trial began on May 21.

Warren challenges the district court's finding there was a good faith doubt as to his competence, and claims the court ordered the competency examination and hearing only to avoid the strictures of the Speedy Trial Act. We review the district court's finding of good faith doubt for clear error. *United States v. Hoskie,* 950 F.2d 1388, 1392 (9th Cir.1991).

At a status conference on March 25, seven days before the date set for trial, Warren's counsel informed the court that counsel would not be prepared for trial on the date set because of government delay in providing discovery and in bringing the defendant from prison in California to Hawaii where he would be available to counsel. Counsel also reported to the court that he had learned the previous day "there is a prior at least psychological interview with a professional in [Warren's] past"; that counsel had arranged to have a psychological evaluation of the defendant by a local physician; and that this evaluation might reveal the need for further delay in the trial. The court asked counsel whether Warren would seek a continuance, and counsel responded he would not.

At another status conference the following day, the court informed counsel that on consideration of the file the court had concluded there was a good faith doubt as to Warren's competence to stand trial, and the court intended to order a competency examination and hearing.[4] Warren's counsel objected, stating he did not question War-

---

**4.** The court stated:

I've taken time to review the file in this case. . . . The manner in which the alleged crime took place raises concern in this court about his competency to stand trial. Now with these revelations that he has undergone psychiatric treatment, this raises even more of a concern in this Court's mind. Therefore in an exercise of my duty and responsibility as a judge to ensure that the defendant that stands trial before me is fully competent and capable

in every way, particularly to assist in his defense [I will] sua sponte order a medical examination pursuant to [18 U.S.C. § 4241(a)]. . . . It is necessary for this Court to have a good faith doubt as to a defendant's guilt to understand consequences and to assist in the defense and I have the good faith doubt based upon the allegations, the manner and mode in which the crime allegedly took place, and now substantially raised by the concern that he has seen a psychiatrist in the past.

ren's competency. Under questioning by the court, however, counsel admitted he too was concerned about Warren's competency.[5] The court ordered a competency examination and hearing pursuant to 18 U.S.C. § 4241(a), and continued the trial date. The court tolled the running of time under the Speedy Trial Act pursuant to 18 U.S.C. §§ 3161(h)(1)(A), 3161(h)(8)(A), & 4241(a).

■ It was the court's duty to order a competency hearing *sua sponte* if the court had reasonable grounds for concluding there was a good faith doubt as to Warren's competency. *Chavez v. United States*, 656 F.2d 512, 515 (9th Cir.1981); *United States v. Ives*, 574 F.2d 1002, 1004–05 (9th Cir.1978). Having ordered a hearing, the Court had discretion to order a competency examination *sua sponte*, 18 U.S.C. § 4241(b) ("Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted").

■ The defendant's prior psychological history was a relevant factor in deciding whether to order a competency hearing. *Chavez*, 656 F.2d at 518. Counsel's belief that the defendant might not be competent was also relevant. *Ives*, 574 F.2d at 1005; *see also Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir.1991) ("While the opinion of . . . counsel certainly is not determinative, a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings."). The court also properly relied on "the manner and mode in which the crime allegedly took place." *See Hernandez*, 930 F.2d at 718 (nature of crime may be a factor in determining whether to hold competency hearing). Taken together these factors provided reasonable grounds for entertaining a good faith doubt about Warren's competency. Given the circumstances, the Court did not abuse its discretion in ordering a full evaluation at a federal facility rather than relying on the results of a limited examination by a private doctor arranged by Warren's counsel.[6]

## IV.

Warren's final claim relates only to the murder conviction. He asserts the district court responded inadequately to questions from the jury about premeditation and the consideration of second degree murder. We review for abuse of discretion. *United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir.1986).

## A.

On the first day of deliberation, the jury sent the court a note reading: "Is premeditated to 'hurt' the same as premeditated to 'kill'?" Warren argued the Court should answer the question "No" because premeditation to hurt, as distinguished from premeditation to kill, would not support a verdict of first degree murder. Over Warren's objection, the court instead referred the jury to a previously given instruction, Instruction No. 9, "and in particular, the

---

**5.** Warren's counsel and the court engaged in the following discussion:

> THE COURT: The fact that you need to ensure yourself . . . is of great concern to the Court. I understand you need to ensure yourself because you have a question.
> COUNSEL: That's correct.
> THE COURT: The reason you have a question is because of the nature and consequences and the nature of the way this offense occurred and because of his mental history. Well, I agree with you wholeheartedly and I want to ensure myself, this Court must ensure itself, that he is competent to stand trial. I think your questions are legitimate ones and you say you don't have concern, of course you have a concern. That's why—you're shaking your head up and down yes.
> COUNSEL: Yes, I do, Your Honor.

THE COURT: . . . [T]he Court shares that concern.

**6.** Warren argues the district court used the competency examination and hearing to toll the running time under the Speedy Trial Act because the Court was concerned Warren's counsel would not have enough time to prepare for trial. However, the Court's concern that defense counsel lacked time to prepare a defense because of the government's delay in producing the defendant and providing discovery might itself be a proper ground for excluding time under the Act. *See* 18 U.S.C. §§ 3161(h)(8)(A), 3161(h)(8)(B)(iv). Warren does not explain why the court would conceal its "real" reason for tolling the running of time when that reason might have been sufficient in itself.

third element of the offense" as defined in that instruction.[7]

■ The jury's question indicated at least some jurors had been confused by the original instructions regarding a critical legal issue not specifically covered by those instructions—whether Warren could be found guilty of first degree murder if he intended only "to hurt" Canady rather than "to kill" him. The court's original instruction focused on the nature of "premeditation" rather than upon what must be premeditated to establish first degree murder.

In responding to the jury's inquiry in these circumstances "it is not sufficient for the court to rely on more general statements in its prior charge." *United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989). Referring the jury back to the original instruction would not correct the apparent impression of at least some jurors that intent "to hurt" rather than "to kill" might be sufficient to convict Warren of first degree murder. The Court should have provided a supplemental instruction sufficient to clear up the uncertainty that the jury had brought to the Court's attention. *Id.*

The Court expressed concern that a simple "no" answer to the jury's question might mislead the jury because "to hurt" might actually mean "to kill" in the street parlance employed by the young people involved. The possibility seems remote, particularly since the two terms were used in opposition to each other within the same question. Moreover, the Court's exchange was with the jury, and there was no reason to believe the jurors attached any special meaning to these common words.

## B.

■ On the last day of deliberations, the jury sent the judge a second note reading: "If the jury disagrees on Murder in the First Degree, does it automatically make it Second Degree?" Warren asked the court to refer the jury to Instruction No. 15.[8] Over Warren's objection, the Court instead responded:

Please see Instruction 32 and the Verdict form itself. There is no obligation upon the jury to automatically reach any verdict in this case. It is your obligation to deliberate until you reach a verdict on each of the counts. Whatever verdict you reach must be unanimous.[9]

The court's response focused on the second part of the jury's question and properly informed the jury a conviction for second degree murder would not follow "automatically" and without further deliberation. Warren argues that the introductory clause of the question ("If the jury disagrees on Murder in the First Degree") indicated jury confusion as to *when* the jury could consid-

7. Instruction No. 9 read:

9. In order for the defendant to be found guilty of Murder in the First Degree, the government must prove each of the following elements beyond a reasonable doubt:

....

Third: that the killing was premeditated;

....

Premeditation means with planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough, after forming the intent to kill, for the killer to have been fully conscious of the intent and to have considered killing.

8. Instruction 15 read:

15. The crime of Murder in the First Degree includes the lesser crimes of Murder in the Second Degree and Voluntary Manslaughter. If (1) any of you are not convinced beyond a reasonable doubt that the defendant is guilty of Murder in the First Degree and (2) all of you are convinced beyond a reasonable doubt that the defendant is guilty of either the lesser crime of Murder in the Second Degree or the lesser crime of Voluntary Manslaughter, you may find the defendant guilty of either....

9. Instruction 32 read:

32. As to Count 1 of the indictment, which charges Murder in the First Degree, you may bring in any one of the following unanimous verdicts:

1. Guilty as charged of Murder in the First Degree; or

2. Not guilty of Murder in the First Degree; or

3. Guilty of the lesser included offense of Murder in the Second Degree; or

4. Not guilty of the lesser included offense of Murder in the Second Degree; or

5. Guilty of the lesser included offense of Voluntary Manslaughter; or

6. Not guilty of the lesser included offense of Voluntary Manslaughter....

er the second degree charge, and the court's response left the impression the lesser charge could not be considered until the jury first unanimously agreed Warren was not guilty of first degree murder. This, Warren argues, "undercut the defendant's right to have the jury consider the lesser offense of Murder in the Second Degree upon any one juror's disagreement as to guilt on Murder in the First Degree," *see United States v. Jackson*, 726 F.2d 1466, 1469–70 (9th Cir.1984), (defendant may decide whether jury can consider lesser included offenses if jury cannot reach a verdict on the greater offense) and "inadvertently undermined its earlier correct instructions" on this issue, *United States v. Hastings*, 918 F.2d 369, 371 (2d Cir.1990).

We agree the court should have informed the jury it could consider a lesser included offense if it disagreed on murder in the first degree, or should have referred the jury to Instruction No. 15 instead of or in addition to Instruction No. 32. Either course would have made clear to the jury that it was not required to reach a unanimous verdict of acquittal on the greater charge before reaching the lesser included offense.

### C.

■ "[A]n error in criminal jury instructions requires reversal unless there is no reasonable possibility that the error materially affected the verdict, or in other words, that the error was harmless beyond a reasonable doubt." *Rubio–Villareal*, 967 F.2d at 297 n. 3. That standard also applies when a court errs in answering the jury's questions regarding instructions. Here the errors in the court's answers were not harmless. The evidence of premeditation was not overwhelming.[10] There

10. There was evidence that Johnson carried a knife when the group left the house to search for Canady, but there is no evidence Warren was aware of it at the time. Although Warren said he was going to "do somebody," there was testimony the phrase meant only that Warren planned to beat someone up. Warren himself testified he did not intend or plan to kill the victims, and did not aim the knife. He testified he did not decide to hurt Canady until the exact moment he stabbed him.

is a reasonable possibility the jury might not have convicted Warren of first degree murder if no error had occurred. *See Rubio–Villareal*, 967 F.2d at 296 n. 3.

The conviction for murder is reversed. The convictions for attempted murder and assault are affirmed.

On the other hand, Rogers Watson testified that after the victim asked "What's up?" Warren stepped forward, said "I want to show you what's up," and stabbed Canady in the chest. One bystander heard Warren and his friends "talking hostile" before the confrontation with the victim, and another heard someone in the group say "There he is."