**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Johnnie T. WARREN, Defendant–Appellant.**

No. 93–10384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1994.

Decided June 7, 1994.

---

Rustam A. Barbee, Asst. Federal Public Defender, Honolulu, HI, for defendant-appellant.

Edward H. Kubo, Jr., Asst. U.S. Atty., Honolulu, HI, for plaintiff-appellee.

Before: FARRIS, BEEZER, and RYMER, Circuit Judges.

Opinion by Judge FARRIS; Concurrence by Judge RYMER.

FARRIS, Circuit Judge:

Johnnie T. Warren appeals his conviction for first degree murder. 18 U.S.C. § 1111. He argues that the district court erred by employing the blind strike method of jury selection, admitting irrelevant and prejudicial evidence, refusing to submit his theory of defense instruction, and improperly instructing the jury that it could infer malice aforethought through his use of a knife. We affirm.

### I.

We summarized the background facts in *United States v. Warren*, 984 F.2d 325 (9th Cir.1993) (*Warren I*):

On January 5, 1991, 19–year–old Johnnie Warren and a group of his friends were drinking beer at the home of one of the group when Derek Johnson, another friend, arrived and reported a man had accosted Warren's sister at a store on a local army base, Schofield Barracks. Warren and the others set out in search of the man. Several hours later, they confronted William Canady and Rogers Watson near the Paradise Club, an enlisted men's club on the Schofield base. Warren stabbed Canady once in the chest and a second time in the back as Canady collapsed. Warren then stabbed Watson, threw the knife into the bushes, and fled. Canady died from his wounds; Watson recovered.

*Id.* at 327.

A jury convicted Warren of first degree murder, attempted murder, and assault with a deadly weapon. "The court sentenced Warren to life without parole for the murder

of Canady, 20 years for the attempted murder of Watson, and five years for assault with a deadly weapon." *Id.* Warren appealed. Holding that the district court responded inadequately to questions from the jury about premeditation and second degree murder, we reversed the conviction for murder, but upheld the convictions and sentences for attempted murder and assault. *Id.* at 329–31.

After a second trial on the murder charge, a jury found Warren guilty of first degree murder. The district court sentenced Warren to life without parole to run concurrent with his previous sentences for attempted murder and assault.

## II.

The district court used the blind strike method of jury selection, in which the parties simultaneously exercise peremptory challenges to the jury panel without knowing which jurors their opponent has struck. The judge is the only one in his district who uses this method. In exercising their challenges, Warren and the government both struck the same juror. Warren contends that the use of the blind strike method violated his rights to due process and equal protection, and was contrary to Federal Rule of Criminal Procedure 24(b).[1]

■■■ The district court's selection of procedures for the exercise of peremptory challenges is reviewed for an abuse of discretion. *United States v. Turner,* 558 F.2d 535, 538 (9th Cir.1977). Defendants need not show that they were prejudiced by an error. *Id.* at 538–39 (citing *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965)).

■■■ District courts have wide discretion to select a method for the exercise of peremptory challenges. *Turner,* 558 F.2d at 538; *see also Pointer v. United States,* 151 U.S. 396, 412, 14 S.Ct. 410, 416, 38 L.Ed. 208 (1894) (holding that courts have discretion to choose the order in which peremptory challenges are exercised). Rule 24(b) sets the

number of peremptory challenges available to each side, but does not prescribe a system for striking jurors. Nonetheless, the method selected by the district court must not unduly restrict defendants' use of their challenges. *Turner,* 558 F.2d at 538.

■■■ Even when the government and a defendant challenge the same juror, the blind strike method does not impair a defendant's full use of his or her peremptory challenges. *Hanson v. United States,* 271 F.2d 791, 793 (9th Cir.1959); *Carbo v. United States,* 314 F.2d 718, 748 (9th Cir.1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964). Rule 24(b) does not specify that a defendant's challenges may not overlap the government's. Other circuits have also upheld the use of the blind strike method. *See, e.g., United States v. Norquay,* 987 F.2d 475, 478 (8th Cir.1993); *United States v. Mosely,* 810 F.2d 93, 96–97 (6th Cir.), *cert. denied,* 484 U.S. 841, 108 S.Ct. 129, 98 L.Ed.2d 87 (1987); *United States v. Roe,* 670 F.2d 956, 961 (11th Cir.), *cert. denied,* 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982); *United States v. Sarris,* 632 F.2d 1341, 1343 (5th Cir.1980). Although a judge may be the only one in a district who uses the blind strike method, unless the local rules are to the contrary, nothing prohibits this divergence from customary practice.

## III.

■■■ The district court permitted testimony that when Warren and his friends drove up to the Paradise Club, Warren was heard by a witness to say that he wanted to "do somebody," and that when the witness tried to persuade Derek Johnson to put his knife away, Warren told her to "shut the f--- up." Warren argues that these statements were inadmissible hearsay.

■■■ We review the district court's decision to admit evidence for an abuse of discretion. *United States v. Lim,* 984 F.2d 331, 335 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993).

---

1. Rule 24(b) provides in pertinent part:

    If the offense charged is punishable by imprisonment for more than one year, the govern-

ment is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges.

Whether the district court correctly construed the hearsay rule is a question of law reviewed de novo. *United States v. Layton*, 855 F.2d 1388, 1398 (9th Cir.1988) (construing Fed.R.Evid. 801(d)(2)(E)), *cert. denied*, 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

The statements were admissable under Federal Rule of Evidence 801(d)(2)(A) as admissions by a party opponent. *Lim*, 984 F.2d at 336. Rule 801(d)(2)(A) provides that a statement is not hearsay if "[i]t is offered against the party and is ... the party's own statement...."

Warren maintains that the statements were as probative of an intent to fight as they were of an intent to kill. This objection goes to the weight of the statements, not their admissibility. A defendant's "own out-of-court admissions ... surmount all objections based on the hearsay rule ... and [are] admissible for whatever inferences the trial judge [can] reasonably draw." *United States v. Matlock*, 415 U.S. 164, 172, 94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1974).

Warren also argues that the prosecutor impermissibly used the statements during closing argument to inflame the jury's emotions. The statements were relevant to the issues of malice aforethought and premeditation. The record satisfies us that the prosecutor merely explained the government's interpretation of Warren's statements and actions, without improperly appealing to the jury's emotions.

#### IV.

At the second trial, Warren was charged only with murdering Canady. The district court permitted the government to introduce evidence that Warren stabbed Watson immediately after stabbing Canady. In addition, Watson testified that Warren stated, "You too, huh?" before stabbing him. Warren argues that the introduction of this evidence violated Federal Rule of Evidence 404(b), which states that "[e]vidence of other crimes ... is not admissible to prove the character of a person in order to show action in conformity therewith."

Whether evidence is "other crimes" evidence within the meaning of Rule 404(b) is a question of law that is reviewed de novo. *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir.1987).

The district court properly allowed the government to introduce evidence regarding the stabbing of Watson. "Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined.'" *Id.* at 279 (quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir.1979) (alteration in original)). The stabbing of Watson is "inextricably intertwined" with the stabbing of Canady. Both were part of a single course of action and occurred within moments of each other. Offenses committed in a single criminal episode do not become inadmissible because the defendant is being tried for only some of his acts. *Soliman*, 813 F.2d at 279.

#### V.

Warren argues that the district court erred in limiting his theory of defense instruction and that this error was compounded by the court's rejection of his premeditation instruction. We reject the argument. The court's instructions adequately conveyed the defense's theory that Warren had not acted with the specific intent to kill Canady and that the killing was not premeditated.

Whether the instructions adequately cover the defense theory is reviewed de novo. *United States v. Gomez–Osorio*, 957 F.2d 636, 642 (9th Cir.1992); *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir.1990). We review the instructions as a whole and consider how the jury would have reasonably understood them in the context of the entire trial. *Mason*, 902 F.2d at 1441.

Defendants are entitled to have a court instruct a jury on their theory of defense if the instruction is supported by law and has some foundation in the evidence. *Id.* at 1438; *United States v. Escobar de Bright*, 742 F.2d 1196, 1198 (9th Cir.1984). Defendants, however, are not entitled to their preferred wording of the instruction. A court

may reject portions of a proposed theory of defense that merely rephrase explanations of the law adequately covered elsewhere in the instructions. *United States v. Lopez–Alvarez*, 970 F.2d 583, 597 (9th Cir.), *cert. denied*, ―― U.S. ――, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992); *United States v. Hall*, 552 F.2d 273, 275–76 (9th Cir.1977).

Warren requested the court to instruct the jury on his theory of defense as follows:

> The theory of the defense in this case is that Johnnie Warren did not act with the specific intent to deliberately take the life of Willie Canady, and that the killing occurred in the heat of the moment without reflection or premeditation.

> Under the law, an accused may not be convicted of Murder in the First Degree unless the government proves to the jury, beyond a reasonable doubt, that the accused specifically intended his actions to result in the death of another and premeditated this intent to kill. *The intent to merely injure or wound another person is not sufficient to find specific intent to kill.* Premeditation requires a period of time in which the accused coolly deliberates, or thinks the matter over, before acting.

> Therefore, if you find that the government has failed to prove, beyond a reasonable doubt, that Johnnie Warren specifically intended to kill Willie Canady and that Johnnie Warren premeditated this specific intent to kill before acting, you must find Johnnie Warren not guilty of Murder in the First Degree.

(Emphasis added). The district court refused to read the jury all of Warren's proposed instruction, and instead delivered only the italicized portions. The court reasoned that the deleted portions of the second and third paragraphs merely repeated statements of the law included elsewhere.

The court also declined to deliver Warren's proposed instruction on premeditation, which stated:

> Premeditation, which is required in addition to malice aforethought in order to establish the offense of Murder in the First Degree, is typically associated with murder in cold blood and requires a period of time in which the accused coolly deliber-

ates, or thinks the matter over, before acting. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough, after forming the intent to kill, for the killer to have been fully conscious of the intent and to have considered killing.

The instructions as a whole more than adequately covered the issues addressed in Warren's proposed theory of defense and premeditation instructions. The court's theory of defense instruction retained Warren's language about the distinction between an intent to injure and a specific intent to kill. *Warren I*, 984 F.2d at 330. When instructing on the intoxication defense, the court further explained the issue of specific intent. As for the court's decision to delete the third paragraph's discussion of reasonable doubt, there were repeated references to the government's burden of proving each element of its case beyond a reasonable doubt. In addition, the court gave an extensive and accurate instruction on premeditation.

The jury was not left to piece together the theory of defense from disparate fragments of the general instructions. *Cf. Mason*, 902 F.2d at 1441. The court gave a concise and accurate summary of Warren's theory of defense. The instructions as a whole clearly and thoroughly explained the issues raised in the rejected portions of Warren's proposed instructions. *Cf. Lopez–Alvarez*, 970 F.2d at 597.

## VI.

Warren objected to the district court's instruction on malice aforethought, which provided:

> Malice aforethought may be inferred from evidence that a deadly weapon was used.

> If it is shown that the defendant used a deadly weapon in the commission of a homicide, then you may find, from the use of such weapon, in the absence of explanatory or mitigating circumstances, the existence of the malice which is an essential element of the offense. You are not obliged so to find, however. You may not

find the defendant guilty unless you are satisfied that the government has established every essential element of the offense, as explained in this charge, beyond a reasonable doubt.

A knife, as a matter of law, is a deadly weapon.[2]

Warren contends the court violated his due process rights by instructing that malice aforethought could be inferred from his use of a knife. In addition to his claim of constitutional error, Warren contends that the instruction was misleading, unduly intruded on the jury's fact finding process, and inadequately guided the jury's deliberations.

### A.

We have not stated a standard of review for whether an instruction violates due process by creating an unconstitutional presumption or inference. But in *Dickey v. Lewis*, 859 F.2d 1365, 1368–70 (9th Cir.1988) and *United States v. Washington*, 819 F.2d 221, 225–26 (9th Cir.1987), we reviewed inference instructions without giving deference to the district court.[3] We conclude that the de novo standard applies. We consider how the jury would have reasonably understood the challenged instruction in the context of the instructions as a whole. *Francis v. Franklin*, 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985).

We first consider whether the instruction created a mandatory presumption or a permissive inference. A mandatory presumption instruction tells the jury that it must presume that an element of a crime has been proven if the government proves certain predicate facts. Mandatory presumptions may be either conclusive or rebuttable. A conclusive presumption removes the element from the case once the government has proven the predicate facts. A rebuttable presumption requires the jury to find the presumed element unless the defendant persuades the jury that such a finding is not justified. An instruction violates due process "if it creates a mandatory presumption, either conclusive or rebuttable, which shifts from the prosecution the burden of proving beyond a reasonable doubt an essential element of a criminal offense." *Washington*, 819 F.2d at 225; *Francis*, 471 U.S. at 314, 105 S.Ct. at 1971; *Sandstrom v. Montana*, 442 U.S. 510, 523–24, 99 S.Ct. 2450, 2458–59, 61 L.Ed.2d 39 (1979).

A permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts. Although such an instruction does not shift the burden of proof, it violates due process "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." *Francis*, 471 U.S. at 314–15, 105 S.Ct. at 1971 (citing *Ulster County v. Allen*, 442 U.S. 140, 157–63, 99 S.Ct. 2213, 2224–27, 60 L.Ed.2d 777 (1979)); *Washington*, 819 F.2d at 225.[4]

Warren contends that the district court's malice instruction created a mandatory rebuttable presumption that placed the burden of proving the absence of malice aforethought on the defense. In *Washington*, we held that an almost identical instruction created only a permissive inference. 819 F.2d at 225–226. The district court in *Washington* instructed the jury that " '[u]se of a

---

2. The court previously had instructed the jury that "malice aforethought means to kill either purposely and intentionally or recklessly with extreme disregard for human life."

3. *See also Sandstrom v. Montana*, 442 U.S. 510, 516–17, 99 S.Ct. 2450, 2455–56, 61 L.Ed.2d 39 (1979) (giving no deference to the Montana Supreme Court's conclusion as to how a jury would have interpreted instructions).

4. In *Ulster County*, the Supreme Court stated: When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

442 U.S. at 157, 99 S.Ct. at 2224–25 (citations omitted).

weapon or other instrument in a way that causes death is evidence of malice aforethought.'" *Id.* at 225 (quoting the district court's instructions). Using almost identical language as that used at Warren's second trial, the district court further instructed that:

"If it is shown that the defendant used a deadly weapon in the commission of a homicide, then you may find, from the use of such weapon, in the absence of explanatory or mitigating circumstances, the existence of the malice which is an essential element of the offense. You are not obliged to so find, however."

*Id.* at 226 (quoting the district court's instructions).

Warren asserts that in *Washington* we never considered the impact of the phrase "in the absence of explanatory or mitigating circumstances." He contends that a reasonable juror would have understood the instruction to require the jury to presume the existence of malice aforethought, *unless* the defense provided a satisfactory exculpatory explanation for the evidence.

We reject Warren's interpretations of both *Washington* and the instruction. It is true that in *Washington* we did not focus explicitly on the precise language highlighted by Warren. The phrase, however, was part of a short passage accompanying the inference instruction. We concluded that this passage made it "even more apparent ... that the inference to be drawn is permissive." *Id.* at 226.

Further, when considering the challenged instruction in the context of the other instructions given at Warren's second trial, a reasonable juror could not have concluded that the instruction shifted the burden of proof to the defendant. In close proximity to the permissive inference instruction, the court admonished the jurors to consider all the evidence regarding the issue of malice, reminded them that they were "not obliged to" draw the inference, and emphasized the government's burden of proving every element of the offense beyond a reasonable doubt. Rather than requiring Warren to come forward with exculpatory evidence, the challenged language limited the circumstances in which the jury could infer malice by reminding it to consider whether other evidence explained or mitigated his use of a knife. *Cf. United States v. Vallez,* 653 F.2d 403, 406–407 (9th Cir.), *cert. denied,* 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 223 (1981).

■ Having concluded that the instruction created a permissive inference, we must determine whether the inference is "one that reason and common sense justify in light of the proven facts before the jury." *Francis,* 471 U.S. at 315, 105 S.Ct. at 1971. Although we upheld similar instructions in *Washington* and *Vallez,* we determine the constitutionality of a permissive inference instruction on a case-by-case basis. *Ulster County,* 442 U.S. at 162–67, 99 S.Ct. at 2227–30 (reviewing the specific facts before the jury to determine whether, in the context of that trial, the inference was reasonable).

Therefore, we must review the record evidence. Warren searched for the men who had accosted his sister and openly declared his intent to "do somebody." He stabbed Canady in the chest, and again in the back as Canady fell to the ground, then immediately turned on Watson, said "You too, huh?" and stabbed him in the stomach. Upon these facts, the jury rationally could "make the connection permitted by the inference" and conclude that Warren acted with malice aforethought. *Ulster County,* 442 U.S. at 157, 99 S.Ct. at 2225.

**B.**

■ "A jury instruction need not be unconstitutional for us to find it defective." *United States v. Rubio-Villareal,* 967 F.2d 294, 297 (9th Cir.1992) (en banc). When, as here, a defendant objects to an instruction at trial, we review the district court's formulation of the instructions for an abuse of discretion. We consider whether the instructions—taken as a whole and viewed in context of the entire trial—were misleading or confusing, inadequately guided the jury's deliberations, or improperly intruded on the fact finding process. *Id.; United States v. Kessi,* 868 F.2d 1097, 1101 (9th Cir.1989); *United States v. James,* 576 F.2d 223, 227 (9th Cir.1978).

■ A permissive inference instruction can impermissibly intrude upon a jury's exclusive role as fact finder by suggesting that the judge believes there is sufficient evidence to convict. *Rubio–Villareal,* 967 F.2d at 299–300. Even when the jury understands that it is free to reach its own conclusion, "disclosing the judge's own opinion nevertheless create[s] the risk that the jury [will] abdicate its responsibility to evaluate the evidence in deference to the judge." *Id.* at 299. This problem can be avoided if other instructions condition and qualify the permissive inference instruction, so as to make clear that the judge is not implying the jury should return a guilty verdict. *Rubio–Villareal,* 967 F.2d at 300 n. 9 (citing *Ulster County,* 442 U.S. at 160–62, 99 S.Ct. at 2226–27; *Barnes v. United States,* 412 U.S. 837, 839–40, 93 S.Ct. 2357, 2360, 37 L.Ed.2d 380 (1973)).

■ At Warren's second trial, the district court gave qualifying instructions similar to those we have favored. *Rubio–Villareal,* 967 F.2d at 300 n. 9. The court instructed that there was no obligation to make the inference and that the jury was the exclusive finder of fact. These admonitions alone would not prevent an intrusion into the jury's deliberations. *Id.* at 299. However, the court further stated that the jury "must not read into these instructions ... any suggestion as to what verdict you should return, that is a matter entirely up to you," and emphasized that the jury must consider all evidence relevant to the issue of malice. While giving the inference instruction, the court explained that "explanatory or mitigating circumstances" could negate the inference and reiterated the government's burden as proof beyond a reasonable doubt.

■ In addition to considering the jury instructions, we examine the particular facts of each case when determining whether a permissive inference instruction intruded upon the fact finding process. *Id.* at 300. In *Rubio–Villareal,* the district court instructed that if the defendant was found to be the driver of a vehicle with cocaine hidden in its body, the jury could infer he knew the cocaine was there. *Id.* at 295, 299. Knowledge was the only disputed issue in *Rubio–Villareal,* and the permissive inference instruction

explained, in effect, the one way that the jury could find that element of the crime. "Thus, the instruction was the equivalent of telling the jury that the judge had denied a defense motion for a directed verdict and explaining why." *Id.* at 299. In contrast, there were at least two important issues at Warren's trial: malice aforethought and premeditation. Moreover, as there was sufficient evidence aside from the knife, the jury need not have relied on the inference instruction to find that Warren acted with malice.

Viewing the instructions as a whole in the context of the record evidence, the jury was free to reach its own conclusions.

■ In *Rubio–Villareal,* we identified another potential problem with permissive inference instructions. By focusing on a few isolated facts, the instruction may cause the jury to overlook exculpatory evidence and lead it to convict without considering all relevant evidence. *Id.* at 299–300; *see also United States v. Chu,* 988 F.2d 981, 983–84 (9th Cir.1993); *Schwendeman v. Wallenstein,* 971 F.2d 313, 316 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 975, 122 L.Ed.2d 130 (1993). A passing reference to consider all evidence will not cure this defect. Nor will a similar, but more explicit, admonishment which is not delivered in close proximity to the inference instruction. *Rubio–Villareal,* 967 F.2d at 300. The district court avoided this problem by loading the instructions with frequent reminders that the jury must consider all of the evidence.

### C.

Our fact-intensive review makes us question the effectiveness of permissive inference instructions. They are most effective when least appropriate: where the evidence supporting the inference is sparse and the inference is most crucial to the government's case. Where extensive background facts support the inference and reduce the likelihood that the verdict will be tainted, the instruction is far less likely to play a significant role in the jury's deliberations. Perhaps we are emphasizing the opposite ends of a spectrum; there may be a middle ground where a permissive inference instruction assists the jury without

being overly intrusive or misleading. Still, closing argument affords the government and defense counsel ample opportunity to argue which inferences may be drawn from the evidence. By inviting the district court to join in this process, the government risks introducing error, without gaining much tangible benefit.

**AFFIRMED.**

RYMER, Circuit Judge, concurring:

While I agree that it was not reversible error to give the permissive inference instruction on malice in this case, I must say that inference instructions in general are a bad idea. There is normally no need for the court to pick out one of several inferences that may be drawn from circumstantial evidence in order for that possible inference to be considered by the jury. Inferences can be argued without benefit of an instruction; indeed, inferences are more appropriately argued by counsel than accentuated by the court. Further, because they are a detour from the law which applies to the case, inference instructions tend to take the focus away from the elements that must be proved. In this way they do a disservice to the goal of clear, concise and comprehensible statements of the law for laypersons on the jury. Balanced inference instructions are also difficult to craft. And, as this case demonstrates, inference instructions create a minefield on appeal. For all these reasons, as a practical matter it seems to me both unnecessary and unwise for inference instructions to be requested, or given.