**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Antonio BELTRAN–GARCIA, Jr., Defendant–Appellant.**

**No. 98–50345.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1999.

Decided June 11, 1999.

---

Joseph J. Burghardt, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant.

Juan M. Masini and Roger Haines, Assistant United States Attorneys, San Diego, California, for plaintiff-appellee.

Before: LAY,* SCHROEDER and HALL, Circuit Judges.

LAY, Circuit Judge:

Antonio Beltran–Garcia, Jr. appeals from a judgment of conviction on one count of importation of marijuana in violation of 21 U.S.C. §§ 952 and 960, and one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

On December 18, 1997, Garcia drove a 1991 Chevrolet Silverado pickup truck

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

from Mexico to the United States border at San Ysidro. Upon arrival at the border checkpoint, an inspector noticed that the spare tire mounted underneath the truck was unusually clean and solid when tapped. Garcia was taken to the pat down office by the Secondary Inspector, who found $800 on Garcia's person. Subsequently, twenty kilograms of marijuana were found in the spare tire. Garcia was indicted for knowingly and intentionally importing marijuana and for possession with intent to distribute.

At trial, Garcia claimed that he did not know there was marijuana in the spare tire. He testified that several days before he crossed the border into the United States the tire on his truck went flat. According to Garcia, two individuals approached him and fixed his tire for a fee. Then the individuals sold him a spare tire which they personally mounted to the bottom of his truck while he was away eating. He admitted during trial that he owned the truck and that the substance seized from his vehicle was, in fact, marijuana. Garcia was found guilty of both counts and was sentenced to 21 months imprisonment followed by three years of supervised release. Garcia appeals, claiming that his conviction should be reversed and remanded for a new trial based on the district court's comments while charging the jury and on two erroneous jury instructions. We affirm.

## DISCUSSION

*Judge's Comment*

■ While charging the jury on Count One, the district court stated that the only issue was whether Garcia knew there was marijuana in the vehicle that he was driving when he was arrested at the San Ysidro Port of Entry. The district court told the jury:

> Now, if there's one thing that all of the attorneys have agreed on in this case, they both agree that the only real issue for you to decide in this case is the state of mind of the Defendant. Did he intentionally, did he knowingly bring marijua-

na into this country? There is no doubt that there was marijuana in the truck. There is no doubt that the Defendant was driving the truck. There was no doubt even that he owned the truck. The only issue was whether—was he a blind mule, as they sometimes say, someone who was a victim of somebody sneaking something into his truck and he drove it across, or did he know that the marijuana was there? That's the theory of the Defense in the case.

> Now, the Government has the burden to prove that beyond a reasonable doubt. The Defendant does not have the burden to prove that his client did not know. The Government must prove that he did know. That theory of the case is true on each of the two counts. Knowledge is really the only issue on each of these two counts. And as to that issue, as to all the other issues, the Government has the sole burden.

Tr. III at 10–11. Garcia contends that by instructing the jury in this manner, the district court unconstitutionally relieved the government of its burden of proving each and every element of the offense beyond a reasonable doubt. We disagree.

In *United States v. James*, 576 F.2d 223, 227–29 (9th Cir.1978), this court held that a district court did not impermissibly invade the jury's province by telling them that the only issue in the case was the identity of the person who had made threatening phone calls. The court reasoned: "In our view, the judge was merely fulfilling his historic role of giving the jury 'Assistance by ... observing where the Question and Knot of the Business lies ...'" *James*, 576 F.2d at 228–29 (footnote omitted). As to Count One, the only dispute was whether Garcia had knowledge of the marijuana in his spare tire. As was the case in *James*, Garcia did not dispute any other element of the charges. Garcia admitted that he owned the car, and that the substance found in the spare tire was marijuana. In fact, Garcia's entire defense was that he was unaware of the marijuana's presence under his car when he

crossed the border, and his defense counsel requested that the district court explain this theory to the jury.

The district court's comments in this case did not show a bias and made it clear to the jury that all matters of fact were submitted for their determination. The judge began the instructions by informing the jury that:

In following my instructions, you must follow all of them, and not single out some and ignore others. They are all equally important. And you must not read into these instructions, or into anything I may have said or done during this trial, any suggestion as to what verdict you should return. That is a matter entirely up to you.

Tr. III at 1–2.[1] Thus, the judge clearly instructed the jury that the facts were for them to decide. *See United States v. Mundi,* 892 F.2d 817, 819–20 (9th Cir. 1989) (holding that a judge's comment that a disruption of the airline ticket exchange system automatically constituted fraud did not influence the jury because the judge properly instructed the jury that the facts were for them to decide). Furthermore, the judge repeatedly reminded the jury that the government had to prove all elements of the charge beyond a reasonable doubt. We, therefore, find that the district court did not abuse its discretion in making the comments it did.

*Permissive Inference Instructions*

*Natural and Probable Consequences Instruction*

■ The court gave two further instructions to the jury to which Garcia objected.

1. Toward the end of the instructions, the judge again stated:

   Your verdict must be based solely on the evidence and on the law as I have given it to you with these instructions. However, nothing that I have said or done is intended to suggest what your verdict should be. That is entirely for you to decide.
   Tr. III at 15–16.

2. Specifically, the jury instruction stated:

   You are instructed that if you find that the defendant was the driver of a vehicle con-

First, in instructing the jury on the offense element of knowledge necessary to convict Garcia of importation of marijuana (Count One), the court stated:

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of the acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

Tr. III at 12. Garcia argues that *United States v. Rubio–Villareal,* 967 F.2d 294 (9th Cir.1992) (en banc), requires the conclusion that the natural and probable consequence instruction was erroneous.

In *Rubio–Villareal,* this court struck down a permissive inference jury instruction which permitted the jury to infer that the defendant knew contraband was in his vehicle from the fact that he was the driver and contraband was concealed in the car.[2] The court found two main problems with this permissive jury instruction. First, the court noted that "the instruction constituted an intrusion on the jury's deliberative process because it effectively told the jury in this case that the judge thought there was sufficient evidence to convict the defendant." *Rubio–Villareal,* 967 F.2d at 299. This court also observed that "by focusing the jury on two isolated facts, the instruction permitted the jury to convict without considering all the evidence presented at trial." *Id.* at 300. The court was particularly concerned that the jury would overlook exculpatory evidence.

This court has considered permissive inference instructions since *Rubio–Villareal.* In *United States v. Warren,* 25 F.3d 890

taining contraband in this case; and if you find that the cocaine was found inside that vehicle and concealed in its body, you may infer from these two facts, that the defendant knew that the cocaine was in the automobile; however, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrants any inference which the law permits the jury to draw.
*Rubio–Villareal,* 967 F.2d at 295.

(9th Cir.1994), the court, after a "fact-intensive review," upheld a permissive jury instruction.[3] After recognizing the principle set forth in *Rubio–Villareal* that a permissive inference instruction can intrude upon a jury's exclusive fact-finding role, the court in *Warren* noted that the "problem can be avoided if other instructions condition and qualify the permissive inference instruction, so as to make clear that the judge is not implying the jury should return a guilty verdict." *Warren,* 25 F.3d at 899 (citation omitted). The court in *Warren* found that there were sufficient qualifying instructions to save the permissive inference instruction. The court noted that the district court instructed the jury "that there was no obligation to make the inference and that the jury was the exclusive finder of fact." *Id.* The court held that "[t]hese admonitions alone would not prevent an intrusion into the jury's deliberations." *Id.* (citation omitted). The court continued, however, by stating that the following instructions did adequately or sufficiently prevent such an intrusion:

> The [district] court further stated that the jury "must not read into' these instructions ... any suggestion as to what verdict you should return, that is a matter entirely up to you," and emphasized that the jury must consider all evidence relevant to the issue of malice. While giving the inference instruction, the court explained that "explanatory or mitigating circumstances" could negate the inference and reiterated the government's burden as proof beyond a reasonable doubt.

*Id.*

The court in *Warren* also distinguished *Rubio–Villareal* by noting that in *Rubio–*

*Villareal* there was only one disputed issue and the permissive instruction went to the heart of that issue. The *Warren* court stated "[k]nowledge was the only disputed issue in *Rubio–Villareal,* and the permissive inference instruction explained, in effect, the one way that the jury could find that element of the crime.... In contrast, there were at least two important issues at Warren's trial: malice aforethought and premeditation." *Id.*

This court also distinguished *Rubio–Villareal* in *United States v. Houser,* 130 F.3d 867 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2074, 141 L.Ed.2d 150 (1998). In *Houser,* the court considered a jury instruction virtually identical to the one given in *Warren.* The court upheld the instruction reasoning that the district court included admonitions equivalent to those in *Warren.* The court stated:

> The [district] court informed the jury that it was the sole judge of the facts. It advised the jury no less than three times that it "should not take anything the court may say or do during the trial as indicating what the court thinks of the evidence or what your verdict should be." It told the jury that the choice of a verdict was "a matter entirely up to you." It informed the jury of the government's burden to prove guilt of each of the elements of the crime, including malice, beyond a reasonable doubt. The court also told the jury, both in the permissive inference instruction and elsewhere, that it must consider all of the evidence.

*Houser,* 130 F.3d at 870. The court in *Houser* concluded that due to the district court's instructions viewed as a whole and the posture of Houser's case, "[t]he jury could not have been under the impression

---

**3.** The instruction provided:

Malice aforethought may be inferred from evidence that a deadly weapon was used. If it is shown that the defendant used a deadly weapon in the commission of a homicide, then you may find, from the use of such weapon, in the absence of explanatory or mitigating circumstances, the existence of the malice which is an essential element of the offense. You are not obliged so to find, however. You may not find the defendant guilty unless you are satisfied that the government has established every essential element of the offense, as explained in this charge, beyond a reasonable doubt. A knife, as a matter of law, is a deadly weapon.

*Warren,* 25 F.3d at 896–97 (footnote omitted).

that the judge preferred a particular verdict, and its attention was not unduly focused on a single fact in a manner that created the danger of ignoring other evidence." *Id.* The court, therefore, held that there was no reversible error.

■■■ We review the district court's instructions for an abuse of discretion. *United States v. Warren,* 25 F.3d 890, 898 (9th Cir.1994). In so doing, "[w]e consider whether the instructions—taken as a whole and viewed in context of the entire trial—were misleading or confusing, inadequately guided the jury's deliberations, or improperly intruded on the fact finding process." *Id.* (citations omitted). We conclude that the natural and probable consequence instruction given by the district court in this case did not improperly intrude upon the province of the jury.

First, when viewed as a whole, the district court avoided intruding on the jury's fact-finding role by conditioning and qualifying the permissive inference instruction. *See Warren,* 25 F.3d at 899; *Houser,* 130 F.3d at 870. In giving the natural and probable consequences jury instruction, the judge qualified the instruction by stating that, "[i]t is entirely up to you, however, to decide what facts to find from the evidence received during this trial." Tr. III at 12. Although this one instruction would not be enough to insure that the jury was not being impermissibly persuaded, in combination with the other instruc-

tions, it is sufficient. Like the district court in *Houser,* the judge in this case instructed the jury that they should not read into the instructions any indication of what the court thought the verdict should be. As the court stated, "And you must not read into these instructions, or into anything I may have said or done during this trial, any suggestion as to what verdict you should return. That is a matter entirely up to you." Tr. III at 1–2. The judge also instructed them at least three times that it alone was the trier of fact, and that each element of the offense had to be proven beyond a reasonable doubt.

Furthermore, the judge in this case did not imply to the jury that there was sufficient evidence to convict Garcia. The judge did not state that because Garcia was driving a car with marijuana in it, he knew the drugs were in the car. Instead, the judge told the jury that by considering all the evidence they could infer that Garcia intended the consequences of his actions. The instruction also did not improperly focus the jury on certain facts. The court did not instruct the jury that Garcia could be convicted merely because he drove a car containing marijuana. The court simply instructed the jury to look at all of the evidence, and permitted them to make an inference of knowledge in accordance with their factual findings. We find that instructing the jury in this manner was not reversible error.[4]

4. It is important to note that the natural and probable consequence jury instruction in this case does not fail under the Supreme Court's holding in *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which invalidated an instruction that told the jury, "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.* at 513, 99 S.Ct. 2450. The Supreme Court in *Sandstrom* held that because the jury could have interpreted the presumption as conclusive or as shifting the burden of persuasion, and because either interpretation would have violated the Fourteenth Amendment's requirement that the state prove every element of a criminal offense beyond a reasonable doubt, the instruction given was unconstitutional. *Id.* at 524, 99 S.Ct. 2450. The instruction in this case, however, is not mandatory, but permissive.

This court in *United States v. Washington,* 819 F.2d 221 (9th Cir.1987), held that an instruction that merely establishes a permissive inference as to an essential element is valid "unless 'the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury.'" *Washington,* 819 F.2d at 225 (quoting *Francis v. Franklin,* 471 U.S. 307, 314–15, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)). Common sense supports the conclusion that a person intends the consequences of his actions. Therefore, this permissive inference is valid under the case law of this circuit. *See United States v. Lord,* 711 F.2d 887, 892 (9th Cir. 1983) (holding that there was no error in instructing the jury that "[i]t is ordinarily reasonable to assume that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted");

*Intent to Distribute Instruction*

■ Garcia contests another jury instruction issued by the district court. While instructing the jury on the intent to distribute element necessary to convict Garcia of possession with intent to distribute (Count Two), the court stated:

> There has been evidence that, when the Defendant was apprehended, approximately 45.10 pounds of marijuana was seized. I instruct you that if you find that the Defendant possessed, either actually or constructively, the marijuana, you may infer from the evidence presented and the quantity of the marijuana that the Defendant possessed the marijuana with the intent to distribute and not for his own personal use. However, you are never required to make this inference. It is the exclusive [province] of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits the jury to draw.

Tr. III at 12–13. Garcia contends that the intent to distribute instruction is also invalidated by *Rubio–Villareal.* Once again, we disagree.

With this instruction, the judge did not indicate to the jury that he thought there was sufficient evidence to convict the defendant of intent to distribute. First, as discussed above, there were sufficient instructions qualifying and conditioning the permissive inference to insure that it would not invade the jury's province. Second, unlike in *Rubio–Villareal,* the permissive jury instruction did not focus on the only issue in the case. The jury instructions made clear that the government must prove not only intent, but must first establish that Garcia *knowingly possessed* the marijuana. The judge was not instructing the jury to find that Garcia had knowingly possessed the drugs. He simply told them that they could infer that the quantity of drugs was enough to establish intent.

Finally, unlike the district court involved in *Rubio–Villareal,* the court in this case did not focus the jury's attention on only one fact among many facts. Due to Garcia's blind-mule defense, Garcia did not advance a theory of personal use. Therefore, the judge was simply permitting the jury to infer intent to distribute from the only available evidence—quantity of marijuana. Contrary to Garcia's assertion, this did not preclude the jury from considering all of the evidence, specifically evidence of Garcia's credibility. The jury considered this evidence in determining whether Garcia knowingly possessed the marijuana in the first place, and rejected it. Once the jury made the determination that Garcia knowingly possessed the marijuana, the only evidence of intent to distribute was the fact that he had 45 pounds of marijuana.[5] Therefore, the judge did not isolate and enhance that fact above other facts, but simply informed the jury that they could choose to find intent to distribute from the evidence available to them. Therefore, we find no prejudicial error committed by giving this instruction.

Our holding in this case is not inconsistent with our prior holdings that a judge should not instruct the jury to infer *knowing possession* from a large drug quantity. For example, in *United States v. Chu,* 988 F.2d 981 (9th Cir.1993), this court held that the district court erred by instructing the jury "that possession of a substantial quantity of a controlled substance alone may be sufficient to support a finding of knowing possession." *Chu,* 988 F.2d at 982. Relying on *Rubio–Villareal,* the court reasoned that the instruction "effectively told the jury that because Chu was

---

*United States v. Mayo,* 646 F.2d 369 (9th Cir.1981) (upholding a similar instruction).

**5.** This court has previously held that the jury can infer intent to distribute from quantity of marijuana. *United States v. Davila–Escovedo,* 36 F.3d 840, 843 (9th Cir.1994); *United States v. Innie,* 7 F.3d 840, 844 (9th Cir.1993).

carrying a large quantity of heroin, the jury could disregard all other evidence and convict him of knowing possession." *Id.* at 983. *See also United States v. Williams*, 990 F.2d 507, 510–12 (9th Cir.1993) (holding that a jury instruction permitting a finding that the defendant knowingly possessed narcotics from a large quantity of drugs was error, but not plain error).

These cases are distinguishable from the case at hand. In both cases, there was substantial evidence regarding possession other than quantity. In *Chu*, there were several significant facts regarding whether Chu knowingly possessed the drugs. Chu claimed that he was a "blind mule" and explained in some detail how he unwittingly received the box containing the drugs. In the face of this other evidence, this court held that it was error for the district court to focus only on the quantity of drugs.

This is not the case here. Garcia presented similar evidence in his "blind mule" defense, but that evidence went to knowing possession and not to intent to distribute. With respect to intent to distribute, the government presented evidence through expert testimony that 45 pounds of marijuana is a distributable amount. This was the only evidence of intent. Therefore, the judge did not impermissibly narrow the evidence by giving the intent to distribute instruction, and the instruction was not in error.

■ Although the instructions in this case were not delivered in error, we do not hesitate to point out the "dangers and inutility of permissive inference instructions." *Houser*, 130 F.3d at 870. The government receives very little benefit from requesting these instructions, and should be discouraged from doing so. *See id.* at 870–71; *Warren*, 25 F.3d at 900 (Rymer, J., concurring).

**CONCLUSION** [6]

Based on the foregoing analysis, the judgment of the district court is affirmed.

AFFIRMED.

6. The government's motion for permission to add one page to the Government's Supplemental Excerpt of the Clerk's Record is granted.