06-5119-cr
USA v. Bermudez

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2007
(Argued: March 10, 2008        Decided: June 17, 2008)
Docket No. 06-5119-cr
--------------------------------------------------------x
UNITED STATES OF AMERICA,

Appellee,

-- v. --

RICHIE BERMUDEZ,

Defendant-Appellant.

--------------------------------------------------------x

B e f o r e :  WALKER, CALABRESI, Circuit Judges, and UNDERHILL,
District Judge.*

Appeal by Defendant Richie Bermudez from a judgment of conviction, entered in the United States District Court for the Southern District of New York (Gerard E. Lynch, Judge), for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). We conclude that the district court did not err in admitting police testimony as to drug-related statements made by defendant; that the "blind strike" method of jury selection is both constitutional and consistent with Federal Rule of Criminal Procedure 24(b); and that comments made during the government's closing arguments were not unfairly prejudicial.

---

* The Honorable Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting by designation.

-1-

AFFIRMED.

Judge UNDERHILL dissents, in part, in a separate opinion.

ROGER BENNET ADLER, New York, N.Y., <u>for Defendant-Appellant</u>.

LISA R. ZORNBERG, Assistant United States Attorney, <u>of counsel</u>, (Jonathan S. Kolodner, Assistant United States Attorney, <u>of counsel</u>, on the brief), <u>for</u> Michael J. Garcia, United States Attorney for the Southern District of New York, New York, N.Y., <u>for Appellee</u>.

JOHN M. WALKER, JR., <u>Circuit Judge</u>:

Defendant-Appellant Richie Bermudez appeals from his conviction on one count of possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). He argues that a new trial is warranted on the grounds that the district court (Gerard E. Lynch, <u>Judge</u>) improperly admitted police testimony as to drug-related statements purportedly made by Bermudez; the district court's usage of the "blind strike" method of jury selection violated Federal Rule of Criminal Procedure 24(b) as well as Bermudez's constitutional rights; and two comments made by the government during summation were unfairly prejudicial. We reject all three of defendant's arguments and affirm the judgment of conviction.

**BACKGROUND**

In light of the jury's decision to convict Bermudez, we view

-2-

the facts of the case in the light most favorable to the government. See Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 77 (2d Cir. 2006); see also Arlio v. Lively, 474 F.3d 46, 51 (2d Cir. 2007). On June 26, 2004, New York City police officers – including Sergeant Von Kessel, and Officers Guerrero, Eiseman, Johnson, and Collura – conducted undercover surveillance near several nightclubs in the Bronx, an area that had a history of illegal drug activity and violence. During the surveillance operation, Officer Eiseman noticed Bermudez walking from club to club and speaking with various people on the street. Suspecting that Bermudez might be involved in street-level narcotic sales, Officer Eiseman continued to watch Bermudez. As Bermudez approached the area where Officer Eiseman's unmarked car was parked, Officer Eiseman overheard Bermudez tell another man that he had "fresh bricks back at his apartment," which Officer Eiseman understood to refer to kilograms of cocaine, and that Bermudez could get 500 grams at ten o'clock the next morning.

By radio, Officer Eiseman and his partner, Officer Collura, informed the team of the drug-related conversation that they had overheard, prompting the other officers to focus their attention on Bermudez. From a second car, Sergeant Von Kessel and Officer Guerrero then watched Bermudez and another man, Carlos Delgado, walk toward a Toyota Camry parked in a well-lit area nearby. Both officers saw Bermudez open the trunk, pull out a gun, and

hand it to Delgado, who placed the gun in the waistband of his pants. Sergeant Von Kessel radioed the team to report this sequence of events, provided a description of the two men, and told the team to move in and arrest them.

The officers converged on the scene and stopped Bermudez and Delgado. When Officer Johnson arrived, he promptly approached Delgado based on Sergeant Von Kessel's description, frisked him, and retrieved the gun. The police also found $2600 in Delgado's pants. Bermudez and Delgado were then arrested and each was subsequently charged with one count of possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Delgado pled guilty and did not appeal from his conviction or his sentence of seventy months' imprisonment.

Bermudez's first trial began in September 2005 and ended when the jury deadlocked. At his April 2006 retrial, the foregoing evidence was presented to the jury. The defense called Delgado as their only witness, but he invoked his Fifth Amendment privilege and declined to testify. In lieu of Delgado's trial testimony, the district court allowed his testimony from an earlier unsuccessful suppression hearing to be read to the jury. At that hearing, Delgado admitted to possessing a gun but, consistent with his claim of an absence of probable cause, disputed the police officers' entire account of how it came into his possession. According to Delgado, it was not Bermudez, but a

-4-

man Delgado had just met who gave him the gun inside one of the nightclubs. Delgado also denied walking with Bermudez to the parked Toyota Camry and claimed instead that the police stopped and searched him without probable cause as he was exiting a nightclub. As for the $2600 found on his person at the arrest, Delgado testified that it was "shopping money" for children's clothes. He claimed that he had come to New York from Massachusetts because clothes were cheaper in New York.

The jury returned a guilty verdict against Bermudez on May 2, 2006, and, after denying his motion for a new trial, the district court gave Bermudez the same sentence of seventy months' imprisonment that it had given Delgado. Bermudez now appeals the judgment of conviction.

**DISCUSSION**

Bermudez raises three issues on appeal. He argues that the district court erred in admitting testimony about the drug-related statements that he purportedly made, because they were more prejudicial than probative; that the district court's use of the "blind strike" method of jury selection is unconstitutional and inconsistent with Federal Rule of Criminal Procedure 24(b); and that the government's statements during closing arguments unfairly prejudiced him.

**I. The Admissibility of Bermudez's Drug-Related Statements**

Under Federal Rule of Evidence 403, relevant evidence "may

be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. District courts have broad discretion to balance probative value against possible prejudice, United States v. LaFlam, 369 F.3d 153, 155 (2d Cir. 2004), and we will not disturb that balancing "unless there is a clear showing of abuse of discretion or that the decision was arbitrary or irrational," United States v. Ansaldi, 372 F.3d 118, 131 (2d Cir. 2004).

Bermudez argues that the district court erred in admitting Officer Eiseman's testimony that he overheard Bermudez make statements suggestive of narcotics trafficking, namely that he had "fresh bricks," a common form of cocaine, in his apartment, and that he could get 500 grams the following morning. Bermudez claims that the testimony at best was marginally relevant and that it was unnecessary for Officer Eiseman to testify as to what specifically had prompted him to call the surveillance team to focus their attention on Bermudez. Weighing against this marginal probative value, Bermudez asserts, was the high risk that the jury would view him as a drug dealer and be more inclined to convict him on the gun charge based on this irrelevant fact. Bermudez further argues that the district court abused its discretion in admitting the testimony on direct examination, and that the proper course would have been to admit the statements only after the defense had "opened the door" to

the issue of credibility on cross-examination.

The district court, however, found the probative value of the drug-related statements to be "significant" because the primary issue at trial would be "whether the officers saw what they say they saw with respect to the gun." Critical to the credibility of the officers' account was the reason why they chose to watch Bermudez so closely. The experienced district judge further determined that the risk of prejudice from brief references to drug-dealing was relatively low in this case: "I don't believe that references to drug dealing are somehow shocking or more prejudicial in comparison to the gun charge in the case."

To minimize any potential prejudicial effect, the district judge issued two limiting instructions – once after Officer Guerrero testified that she received a radio communication regarding the drug conversation overheard by Officer Eiseman and his partner, and again after Officer Eiseman testified as to the conversation itself. The district judge instructed the jury that this testimony was only relevant "in evaluating the evidence to try to judge the credibility of what the officers are telling you," as it explained why the officers were watching Bermudez, and that it was "entirely irrelevant" as to whether Bermudez did or did not possess a gun on this particular occasion. See Tr. 108-10 ("I just want to make doubly, triply, emphatically clear

-7-

to you that it's not your responsibility to decide whether Mr. Bermudez is involved in anything with respect to narcotics. That's not the charge.").[1]

Under these circumstances, we conclude that the district court's decision to admit the testimony was not an abuse of discretion. It was apparent from the beginning of the retrial that the authenticity of the officers' account would be contested. At his prior suppression hearing, Delgado, the defense's only witness – and indeed, "the only potential exculpatory witness," as the district court noted – disputed every aspect of what the officers claimed to have seen, including their claim that he received the gun from Bermudez out of the trunk of a Camry. The district court decided to admit this testimony, over the government's objection, in advance of Bermudez's first trial in September 2005. The defense therefore knew that Delgado's testimony would be admitted when it told the jury during opening statements in the second trial that credibility – specifically, whether the police had fabricated a story to justify Bermudez's arrest – was at the heart of the case.

Given the properly anticipated centrality of the officers'

---

[1] These instructions belie the dissent's assertion that "[n]one of the limiting instructions given in this case told the jury that they could not consider whether Bermudez was a drug dealer when deciding whether he was guilty of the gun charge." **Dissent at 13.**

-8-

credibility to the outcome of the case, the district court was not required to wait for Bermudez to launch a direct credibility attack on cross-examination before admitting the officers' testimony as to Bermudez's drug-related comments. Cf. Supplemental App. at 50, 52 (permitting the government to elicit the drug-related testimony at Bermudez's initial September 2005 trial, and noting that "the whole issue is whether these officers are to be believed anyway, . . . the defense will presumably be saying all these guys aren't telling the truth," and "the officers' credibility is central"). We further note that at the second trial, Bermudez did not request the district court to defer the drug-related testimony until the defense had opened the door; rather, he moved to preclude the testimony altogether.

To convince the jury that the officers' story was credible, it was important for the government to establish, as a foundation for the actions taken by the surveillance team that night, why the officers' attention was focused on Bermudez as opposed to any number of other individuals in the high crime area. Without a reasonable explanation for singling out Bermudez, the officers' testimony as to everything that followed could have been suspect. Thus, providing this explanation to the jury was highly probative, as the district court found, and contributed importantly to the completeness of the officers' account. See United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994) (holding

that, where the defense theory was that government informants were lying, testimony that corroborated the informants' account was properly admitted under Rule 403).

Moreover, any danger of unfair prejudice was minimized by the district court's two detailed limiting instructions, issued immediately after Officers Guerrero and Eiseman testified to the drug-related statements. Any argument that these instructions were insufficient to eradicate the statements' prejudicial effect fails because "[a]bsent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions." United States v. Downing, 297 F.3d 52, 59 (2d Cir. 2002); see also Zafiro v. United States, 506 U.S. 534, 540-41 (1993) ("[E]ven if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and juries are presumed to follow their instructions." (internal quotation marks and citation omitted)). Under the circumstances here, the jury could reasonably be expected to comply with the limiting instructions; thus, the "instructions sufficed to cure any possibility of prejudice." Zafiro, 506 U.S. at 541; cf. United States v. LaFlam, 369 F.3d 153, 157 (2d Cir. 2004) (holding, in an armed robbery case, that the district court did not abuse its discretion in admitting evidence of the defendant's uncharged drug use because the district court properly balanced probative value against prejudice and "also gave a limiting

instruction to the jury that reduced any potential prejudice that introduction of the uncharged other act evidence might have caused").

**II.   The "Blind Strike" Method of Jury Selection**

Bermudez next challenges the district court's employment of the "blind strike" method of jury selection.  Under this method, both parties simultaneously, rather than alternately, exercise their peremptory challenges and thus do not know which jurors the other has struck.  He claims that this method violated Federal Rule of Criminal Procedure 24(b) and his constitutional rights to due process and effective assistance of counsel.  In particular, Bermudez argues that because both he and the government struck the same juror, he was effectively "deprived . . . of the full and knowledgeable use of his allotted challenges."  Appellant's Br. at 18.

The Supreme Court's express approval of the blind strike method in Pointer v. United States, 151 U.S. 396 (1894), forecloses Bermudez's argument.  In Pointer, the Court addressed whether a defendant is "entitled of right to have the government make its peremptory challenges first, that he might be informed, before making his challenges, what names had been stricken from the list by the prosecutor."  Id. at 409.  The Court held that no such right existed, and that a defendant is "only entitled of right to strike [a certain number of names] from the list of

-11-

impartial jurymen furnished him by the court."  Id. at 412.

In a non-capital felony case, Federal Rule of Criminal Procedure 24(b) sets the number of peremptory challenges to which a defendant is entitled at ten and the government at six; it does not prescribe any method for the exercise of those challenges. See Fed. R. Crim. P. 24(b); United States v. Blouin, 666 F.2d 796, 798 (2d Cir. 1981).  Rather, "trial courts retain a broad discretion to determine the way peremptory challenges will be exercised."  United States v. Thompson, 76 F.3d 442, 451 (2d Cir. 1996) (internal quotation marks and citation omitted).

Under Pointer and Rule 24(b), Bermudez had a right only to reject ten jurors from the full list, and this right was fully accorded to him by the method that Judge Lynch selected:

> Being required to make all of his peremptory challenges at one time, [defendant] was entitled to have a full list of jurors . . . . Such a list was furnished to him, and he was at liberty to strike from it the whole number allowed by [Rule 24(b)], with knowledge that the first 12 on the list, not challenged by either side, would constitute the jury . . . .
>
> It is true that, under the [blind strike] method pursued in this case, it might occur that the defendant would strike from the list the same persons stricken off by the government; but that circumstance does not change the fact that the accused was at liberty to exclude from the jury all, to the number [ten], who, for any reason, or without reason, were objectionable to him.  No injury was done if the government united with him in excluding particular persons from the jury.

Pointer, 151 U.S. at 411-12.  Thus, no constitutional deprivation or violation of Rule 24(b) occurred when Bermudez struck the same

-12-

juror as the government.

We further note that all five circuits that have considered similar challenges to the blind strike method have upheld it as constitutional and consistent with Rule 24(b).  See United States v. Warren, 25 F.3d 890, 894 (9th Cir. 1994) ("Even when the government and a defendant challenge the same juror, the blind strike method does not impair a defendant's full use of his or her peremptory challenges.  Rule 24(b) does not specify that a defendant's challenges may not overlap the government's." (citations omitted)); United States v. Norquay, 987 F.2d 475, 478 (8th Cir. 1993), abrogated in part on other grounds by United States v. Thomas, 20 F.3d 817, 823 (8th Cir. 1994); United States v. Mosely, 810 F.2d 93, 96-97 (6th Cir. 1987); United States v. Roe, 670 F.2d 956, 961 (11th Cir. 1982); United States v. Sarris, 632 F.2d 1341, 1343 (5th Cir. 1980).  We join our sister circuits in upholding the use of the blind strike method of exercising peremptory challenges.

**III. The Government's Closing Arguments**

Bermudez's final contention is that he was unfairly prejudiced by two statements made during the government's closing arguments.  The first was a comment casting doubt on Delgado's claim that he traveled to New York to purchase discount children's clothing because "life experience tells you the cost of the trip from Massachusetts to New York was more than any

discount on clothing he was going to find here." The second was the government's rebuttal to the argument that it was hiding something by not calling as a witness Officer Eiseman's partner, Officer Collura, who also allegedly overheard Bermudez's drug-related statements. The government stated, "What would Officer Collura have told you, that he overheard the same thing?"

"[R]eversal on the basis of improper prosecutorial statements during summation is warranted only when the statements, viewed against the entire argument before the jury, deprived the defendant of a fair trial." United States v. Myerson, 18 F.3d 153, 163 (2d Cir. 1994) (internal quotation marks and citation omitted). In this case, Bermudez was not substantially prejudiced by the government's summation because the district court promptly issued a curative instruction after each comment to ensure that the jury did not draw any improper inferences. See United States v. Thomas, 377 F.3d 232, 244-45 (2d Cir. 2004) (holding that the prosecutor's statements were not misconduct causing substantial prejudice where the district judge provided an immediate curative instruction). Accordingly, Bermudez's challenge to the prosecution's summation arguments fails.

**CONCLUSION**

For the foregoing reasons, the judgment of conviction is AFFIRMED.

-14-

UNDERHILL, *District Judge*, concurring in part and dissenting in part:

I join parts II and III of the majority opinion, but respectfully dissent from the affirmance of the District Court's evidentiary ruling. The pre-trial decision to admit Bermudez's overheard admission that he had a significant quantity of drugs for sale — which the majority affirms on the ground that the admission was permissible to bolster the credibility of police officers expected to testify at trial – violated clearly established precedent of this Court that bolstering evidence can be admitted only after credibility has been attacked. In addition, the result of the District Court's Rule 403 balancing fell outside the range of reasonable outcomes and therefore amounts to an abuse of discretion. Because Bermudez suffered substantial prejudice as a result of the erroneous evidentiary ruling, I would vacate the judgment and remand the case for a new trial.

**I.   Bolstering Evidence**

The error in admitting Bermudez's statements about illicit drugs as bolstering evidence becomes clear by focusing on the timing and substance of the challenged evidentiary ruling.[1] Apr.

---

[1]      The entirety of the District Court's ruling follows:

In the first place, I deny the defendant's motion in limine to exclude testimony regarding statements allegedly made by Mr. Bermudez regarding drugs. As I ruled in the previous trial, the

-15-

27 Tr. at 3-4.[2]  The ruling was not made during trial in response to an actual attack on any witness's credibility or following the admission into evidence of Carlos Delgado's transcribed testimony.  Rather, the ruling was made when deciding a motion *in limine* in advance of any testimony in Bermudez's second trial, indeed, before the jury was selected.  At the time Bermudez's motion *in limine* was decided, the District Court had not admitted Delgado's statement.  The District Court did not then even know whether Delgado's testimony would be offered by the defendant, Apr. 27 Tr. at 4 (District Court: "I imagine Mr. Delgado's testimony is likely to be offered by the defense."); indeed, the District Court still did not know if Delgado's testimony would be

---

probative value of these statements seems to me significant.  The whole issue is whether the officers saw what they say they saw with respect to the gun that is charged.

The officers will be describing various movements of Mr. Bermudez, particularly as I imagine Mr. Delgado's testimony is likely to be offered by the defense, those movements will be contested.  It would be highly peculiar, it seems to me, for a jury to try to address whether the officers saw what they said they saw without some understanding of why the officers would be watching Mr. Bermudez.  So I think there is significant probative value to putting before the jury why the officers' attention was focused on Mr. Bermudez.

The prejudice, on the other hand, does not seem to me to be significant.  I don't believe that references to drug dealing are somehow shocking or more prejudicial in comparison to the gun charge in the case.  And whatever prejudice there is can and will be further minimized by a limiting instruction which will be given. Apr. 27 Tr. at 3-4.

[2]  The four-day trial took place on April 27 and 28 and May 1 and 2 of 2006.  Citations to the trial transcript will indicate the day of trial and transcript page.

offered as the government neared the end of its case in chief. May 1 Tr. at 214 ("Now, if on the other hand you're not going to offer Delgado's testimony . . . ."). Therefore, the decision to admit the bolstering evidence was made before the District Court could have known whether and how Bermudez would choose to attack the police officers' credibility.[3]

Significantly, despite the majority's heavy reliance on the need to admit the evidence to bolster the credibility of police officers expected to testify at trial, the District Court never mentioned credibility in its ruling on the motion *in limine*; the first mention of credibility was in a limiting instruction. Instead, when admitting the evidence, the District Court merely anticipated that the prosecution and defense would offer two conflicting versions of the events leading to Bermudez's arrest, Apr. 27 Tr. at 4 (Bermudez's "movements will be contested"), and believed that the officers' motivation for watching Bermudez was important, *id.* ("there is significant probative value to . . . why the officers' attention was focused on Mr. Bermudez"). Simply offering an alternative version of events (or here, merely

---

[3] The majority attempts to support the admission in the second trial with descriptions of what occurred during the first trial, an effort that I believe is inappropriate. *See Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 55 (2d Cir. 1978) (*per curiam*) ("Because we cannot anticipate whether the question of admissibility will arise in the same manner on the retrial, we will not attempt to indicate in advance what the trial court's ruling should be.").

-17-

anticipating that the defense will do so) does not amount to a defense attack on the credibility of government witnesses,[4] and certainly does not justify the admission of bolstering evidence during the government's direct examination.  If it did, the government would be permitted to offer evidence to bolster the credibility of its witnesses during their direct testimony in any case in which the defendant intends to put on evidence.

No one suggests that Bermudez's admitted drug dealing was relevant to any of the substantive issues in this felon-in-possession gun case.  The only relevance cited by the District Court was to provide the jury with "some understanding of why the officers would be watching Mr. Bermudez." *Id*.  According to the majority, the officers' motivation is "[c]ritical to the credibility of the officers' account." **Majority at 7.**  Evidence of Bermudez's drug dealing, in other words, bolsters the officers' credibility.  The majority now holds, without citation, that the District Court could allow the government to bolster its witnesses before an attack on their credibility in light of "the properly anticipated centrality of the officers' credibility." **Majority at 8.**

Never before has this Court held that anticipation is

---

[4]    This Court has recognized that even cross-examining a witness's direct testimony does not necessarily amount to an attack on credibility. *United States v. Fernandez*, 829 F.2d 363, 366 (2d Cir. 1987) (*per curiam*).

sufficient to render bolstering evidence admissible. By so holding, the majority significantly departs from this Court's many decisions that evidence to bolster a witness's credibility is not admissible unless and until the witness's veracity is attacked. *E.g., United States v. Quinones*, 511 F.3d 289, 312-13 (2d Cir. 2007); *United States v. Porges*, 80 Fed. Appx. 130, 132 (2d Cir. 2003) (summary order); *United States v. Gaind*, 31 F.3d 73, 78 (2d Cir. 1994); *United States v. Pierre*, 781 F.2d 329, 332 n.1 (2d Cir. 1986); *United States v. Borello*, 766 F.2d 46, 56 (2d Cir. 1985); *United States v. Jones*, 763 F.2d 518, 522 (2d Cir. 1985); *United States v. Edwards*, 631 F.2d 1049, 1051 (2d Cir. 1980); *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1146 (2d Cir. 1978); *see also* 1 McCormick on Evidence § 33 at 147 (Kenneth S. Broun ed., 6th ed. 2006) (hereinafter "McCormick") ("[A]s a general proposition, bolstering evidence is inadmissible. As of the time of the direct examination, it is uncertain whether the cross-examiner will attack the witness's credibility; the counsel might later waive cross-examination [or conduct limited cross-examination]. . . . For that reason, the witness's proponent must ordinarily hold information favorable to the witness's credibility in reserve for rehabilitation"); *id*. at § 47. I see no reason to break with this Court's clearly established precedent on the permissible use of bolstering evidence.

In this case, the government painted Bermudez as a drug

-19-

dealer in its opening statement and elicited evidence of Bermudez's "fresh bricks" conversation through its direct examination of government witnesses Guerrero, Eiseman, and Von Kessel before Bermudez cross-examined them. Thus, the bolstering evidence was not admissible when presented. Moreover, even if the District Court had properly precluded bolstering evidence until redirect (or until the government's rebuttal case, after Bermudez presented Delgado's testimony), the drug dealing conversation still should not have been admitted unless Bermudez attacked the officers' credibility *on the ground that they had no motivation to watch his actions* – the only conceivable basis of admissibility.

Not every attack on credibility would justify admission of evidence of Bermudez's drug dealing; impeachment with prior inconsistent testimony is an obvious example of an attack on credibility that would not open the door to the bolstering evidence admitted in this case. In determining whether the door has been opened to rehabilitative evidence, "[t]he general test of admissibility is whether [the bolstering evidence] is logically relevant to explain the impeaching fact. The rehabilitating facts must meet the impeachment with relative directness. *The wall, attacked at one point, may not be fortified at another, distinct point*." McCormick, § 47 at 221 (emphasis added). The testimony that Bermudez had drugs to sell

was not "logically relevant to explain the impeaching fact" unless and until the impeachment challenged the officers' motivation to watch him – a line of impeachment never undertaken by Bermudez.

Delgado's testimony, which consisted of a transcript available to the District Court in advance of its ruling, merely contradicted, in a general sense, Eiseman's testimony that Bermudez handed a gun to Delgado. Nothing in Delgado's testimony, however, called into question the officers' motivation for surveilling Bermudez, so the fact that an officer may have overheard Bermudez offer drugs for sale was not relevant to rehabilitate the officers' credibility. Unless and until the defense attacked the officers' motivation for watching Bermudez, their motivation was entirely irrelevant.

Although the standard of review is abuse of discretion, this Court has repeatedly held that a discretionary decision that is legally erroneous "necessarily" amounts to an abuse of discretion. *E.g., Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 439 (2d Cir. 2006). There is clearly established precedent from this Court that credibility can be bolstered only after it is attacked and only with evidence addressing the basis of the attack. Because the ruling on the motion *in limine* conflicts with that authority, I conclude that the District Court committed legal error and therefore abused its

-21-

discretion by admitting Bermudez's statements about drugs to bolster the credibility of government witnesses before their credibility had been attacked.

**II.   The Rule 403 Balancing**

Rule 403 of the Federal Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  A trial judge's rulings with respect to Rule 403 are entitled to considerable deference and will ordinarily not be overturned absent an abuse of discretion.  *Costantino v. Herzog*, 203 F.3d 164, 173 (2d Cir. 2000).  The "improper admission of evidence is grounds for reversal only where it affects 'a substantial right' of one of the parties." *Id*. at 174 (quoting Fed. R. Evid. 103(a)).

This case meets that high standard.  The drug evidence had no probative value to any substantive issue in this gun case, yet its admission subjected Bermudez to tremendous prejudice: (1) that the jury would no longer decide whether the defendant on trial had possessed a gun, but rather whether the *drug dealer* on trial had possessed a gun, and (2) that Bermudez would be required to defend against drug distribution charges never brought against him.

The majority states that the officers' motivation for watching Bermudez was "critical to the[ir] credibility."

-22-

**Majority at 7.** Yet it is unclear, at best, how an explanation of the officers' motivation for watching Bermudez is relevant to whether the Eiseman "saw what he said he saw" that night. In my view, the officers' motivation for watching Bermudez was entirely irrelevant, unless and until Bermudez attacked their credibility on the ground that they were not motivated to watch him. If a police officer testified that he was at the scene and saw what he saw, without explaining why he watched, no jury would pause to wonder why he watched – that's his job.

Even if motivation became an issue on cross-examination – which it did not – there was a plethora of possibilities available to the District Court short of admitting the exact conversation wholesale. *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) ("[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives. . . . [W]hen a court considers 'whether to exclude on grounds of unfair prejudice,' the 'availability of other means of proof may . . . be an appropriate factor.'") (quoting Advisory Committee's Notes on Fed. R. Evid. 403). For example, the District Court could have allowed the officers to testify why they were conducting surveillance in that area,[5] or that Eiseman

[5] Officers Guerrero and Eiseman and Lieutenant Von Kessel each testified that they were assigned to conduct surveillance at the intersection because the area had a history of illegal drug

-23-

grew suspicious of Bermudez because of the way he was acting,[6] or even that he took an interest in Bermudez because he overheard Bermudez discuss what Eiseman perceived to be some unspecified illegal activity. The ready existence of multiple viable and substantially less prejudicial means of proof further diminishes any probative value the drug dealing comments may have had.

The pre-trial ruling that the "fresh bricks" conversation would be admitted caused Bermudez immediate and acute prejudice. Before the jury heard the first word of testimony, the government had labeled Bermudez a big-time drug dealer in its opening statement: "[T]he officers who were watching the intersection that night, were very familiar with that intersection. They've been there many, many times responding to reports of drug dealing . . . . And then two of the officers who were sitting in the car on Westchester Avenue overheard this man, Richie Bermudez, having a conversation about a drug deal. They overheard him talking like he was a big-time drug dealer." Apr. 27 Tr. at 26-27. The government then proceeded to elicit testimony about Bermudez's drug dealing throughout its case in chief. *E.g.*, *id.* at 50

---

activity and violence associated with the nightclubs located on the corners of the intersection. Apr. 27 Tr. at 43-44, May 1 Tr. at 131, 180.

[6] Eiseman testified that he focused on Bermudez initially because Bermudez was "walking around from club to club, not going inside anywhere," which was "a little suspicious." May 1 Tr. at 138-39.

-24-

(testimony of Officer Guerrero: recounting police radio transmission that, "I can't believe this guy just tried to make a drug transaction, a drug deal, right in front of us"), Apr. 28 Tr. at 111 (Officer Guerrero did not see Bermudez possess drugs), *id.* at 112 (query about whether drug dealers use stash houses), *id.* at 113-15 (query whether officers could have obtained search warrant based on Bermudez's statements about drugs), May 1 Tr. at 140 (testimony of Officer Eiseman:  "I heard . . . Mr. Bermudez, tell the male Hispanic in the white shirt that he had fresh bricks back at his apartment."), *id.* at 141-42 (Question: "When you overheard Mr. Bermudez talking about fresh bricks what did you understand that to mean?"  Eiseman: "Kilograms of cocaine."; "The male Hispanic in the white T-shirt stated that he needed 500 grams."), *id.* at 186 (testimony of Lieutenant Von Kessel: Bermudez was "telling the guy that he was with that he is a big time guy, that he doesn't deal with the little stuff.  He only deals with the big stuff.").  The testimony elicited by the government cannot fairly be described as "brief references to drug dealing." **Majority at 7.**  From the very beginning of the trial, indeed from the government's opening, Bermudez had to defend against two charges:  illegal gun possession and drug distribution.

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to

-25-

lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.  So, the Committee Notes to Rule 403 explain, '[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief*, 519 U.S. at 180 (internal citations and quotations omitted).  The risk in admitting prejudicial evidence is that "a jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment." *Id*. at 181 (internal quotation and citation omitted).  As such, prejudicial evidence invites "preventive conviction even if [the defendant] should happen to be innocent momentarily." *Id*.

Here, when conducting the required balancing under Rule 403, the District Court did not consider the most significant danger of prejudice from admission of the drug dealing admission –  that the jury would decide Bermudez's guilt on the gun charge based upon his admitted drug dealing.  As a result, the Rule 403 balancing performed was inadequate.

It is precisely *because* Bermudez was charged with gun possession that the substantively irrelevant evidence of drug dealing poses a particularly significant risk of prejudice.  It is axiomatic that drug dealing and guns go hand in hand. *United States v. Hernandez*, 85 Fed. Appx. 269, 271 (2d Cir. 2004)

(summary order) ("guns are frequently tools of the drug trade") (citing *United States v. Flaharty*, 295 F.3d 182, 200 (2d Cir. 2002)).  Thus, there is a very substantial danger that a jury would misuse the drug dealing evidence to explain *why Bermudez possessed the gun*, a purpose for which it was not offered, as opposed to explaining *why the officers were watching Bermudez*, its intended purpose.

The District Court's limiting instructions were necessary, but insufficient to overcome the prejudice to Bermudez.  As noted in the commentary to Federal Rule of Evidence 105:

> If the prejudicial effect of evidence substantially outweighs its probative value, despite a limiting instruction, then the nonoffering party can argue that the evidence should be completely excluded because any limiting instruction would be inadequate.  Rules 403 and 105 are interrelated, because a Judge in determining the prejudice to be suffered from proffered evidence must necessarily take into account whether this prejudice can be sufficiently ameliorated by a limiting instruction. The more effective the instruction in controlling prejudice, the less prejudice is taken into account in the Rule 403 balancing process. As the Advisory Committee Note to Rule 403 observes, the prejudice to be considered under that Rule is the prejudice that is left after a limiting instruction has been given.

Stephen A. Saltzburg, Daniel J. Capra, and Michael M. Martin, Commentary to Federal Rule of Evidence 105, U.S.C.S. Court Rules: Federal Rules of Evidence (Rules 101 - 700) at 93 (2007).

None of the limiting instructions given in this case told the jury that they could not consider whether Bermudez was a drug

dealer when deciding whether he was guilty of the gun charge. The first instruction given by the District Court was the strongest, but it was untimely – given the day after the testimony it addressed[7] – and it was focused on the "narcotics conversation": "Even if you were to believe that he did engage in such a narcotics conversation, you can't use that as any evidence that he likely had a gun." Apr. 28 Tr. at 108-10. The second instruction informed the jury that the evidence of other crimes "is not relevant" and "anything else he may have done on any other occasion or not done isn't really to the point." May 1 Tr. at 141. No limiting instruction was given following Von Kessel's testimony that Bermudez was overhead explaining that he was a "big time" drug dealer. *Id.* at 186. Each limiting instruction should have expressly prohibited the jury from considering whether Bermudez was a drug dealer when deciding the gun case.

Even if the limiting instructions had been perfect and perfectly timely, they would have been insufficient in this case. Although this Court generally presumes that juries follow limiting instructions, that presumption "evaporates where there is an overwhelming probability that the jury will be unable to

---

[7] Not including the government's opening statement, the first mention of Bermudez's drug dealing came during the direct testimony of Officer Guerrero on April 27. Apr. 27 Tr. at 50. The first limiting instruction was given at the end of the defense cross-examination of Guerrero the following day. Apr. 28 Tr. at 108-10.

follow the court's instructions and the evidence is devastating to the defense." *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994). *See also United States v. Becker*, 502 F.3d 122, 130-31 (2d Cir. 2007) ("[W]e have found it inappropriate to presume that a district court's limiting instructions were obeyed when such instructions required jurors to perform 'mental acrobatics.'"); *United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990) (finding overwhelming probability that, despite limiting instructions, the jury was unable to dispassionately consider evidence of rape and sodomy admitted as "background" in a trial for RICO conspiracy and narcotics violations). We ask too much of a jury first to hear that Bermudez was selling kilogram quantities of cocaine, and then to expect them to ignore that fact when deciding whether he possessed a gun.

"A district court 'abuses' or 'exceeds' the discretion accorded to it when . . . its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnote omitted). I believe the result of the Rule 403 balancing in this case was outside the range of permissible decisions and thus amounts to an abuse of discretion.

**III. Conclusion**

The District Court abused its discretion when it admitted

the drug-related conversation, because the probative value, if any, of that evidence was substantially outweighed by its overwhelmingly prejudicial effect.  Moreover, even if the evidence were otherwise admissible under Rule 403 to rehabilitate police officers' credibility, the District Court erred when it denied Bermudez's motion *in limine* with prejudice before trial, because evidence to bolster credibility is not admissible until a witness's credibility has been attacked.  Accordingly, I respectfully dissent from Part I of the majority decision and would reverse the judgment and remand for retrial.