United States v. Fernandes

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION 'SUMMARY ORDER'). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of April, two thousand seventeen.

PRESENT: DENNIS JACOBS,
         CHRISTOPHER F. DRONEY,
                    Circuit Judges,
         TIMOTHY C. STANCEU,
                    Chief Judge, U.S. Court of Int'l Trade.[*]
- - - - - - - - - - - - - - - - - - - -X

United States of America,
         Appellee,

         -v.-                                    16-227

Andrej Konopski, Mindy A. Konopski,
         Defendants,

Jonathan Fernandes,
         Defendant-Appellant.


- - - - - - - - - - - - - - - - - - - -X

_____

[*] Judge Timothy C. Stanceu, Chief Judge of the United States Court of International Trade, sitting by designation.

**FOR APPELLANT:**               Robert G. Smith, Jay S. Ovsiovitch, Federal Public Defender's Office, Western District of New York, Rochester, NY.

**FOR APPELLEE:**               Monica J. Richards, Assistant United States Attorney, for James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Wolford, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Jonathan Fernandes appeals from a criminal judgment and an order of forfeiture entered in the United States District Court for the Western District of New York (Wolford, J.).  Fernandes was convicted on eleven counts (and acquitted on three), and was sentenced principally to a 240-month term of incarceration. The district judge also ordered the forfeiture of thirteen firearms seized from Fernandes's home.  Fernandes challenges the forfeiture order, and also the sufficiency of the evidence and the reasonableness of the sentence with respect to a single count of conviction--namely, aiding and abetting witness tampering in violation of 18 U.S.C. § 1512(b)(1) and (2).  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**1.**  "We review challenges to the sufficiency of evidence de novo." United States v. Pierce, 785 F.3d 832, 837 (2d Cir. 2015).  A defendant challenging the sufficiency of evidence takes up a heavy burden because "we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." Id. at 838.  "We will sustain the jury's verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (internal quotation marks omitted) (emphasis omitted). "The jury may reach its verdict based upon inferences drawn from

circumstantial evidence," and on review, "the evidence must be viewed in conjunction, not in isolation." United States v. Persico, 645 F.3d 85, 104 (2d Cir. 2011) (quotation marks omitted).

To prove witness tampering in violation of 18 U.S.C. § 1512(b)(1), the government must establish that the defendant "knowingly use[d] intimidation, threaten[ed], or corruptly persuade[ed] another person, or attempt[ed] to do so . . . with intent to influence, delay, or prevent the testimony of any person in an official proceeding." And any person who "aids, abets, counsels, commands, induces or procures" the commission of such a crime "is punishable as a principal." 18 U.S.C. § 2(a). "As at common law, a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Rosemond v. United States, 134 S. Ct. 1240, 1245 (2014); see also Hicks v. United States, 150 U.S. 442, 449 (1893) (accomplice liability attaches to conduct done "with the intention of encouraging and abetting" the crime).

At trial, the government introduced recordings of telephone conversations between Fernandes and his co-defendants while Fernandes was in custody. In one of them, his co-defendants (who took turns on the line) referred to a court document pertaining to an inmate who was cooperating against Fernandes. One co-defendant said, "what I would like to do bub is, I mean if it is alright with you, I would like to make about 25 copies of this . . . and just send them to about 25 guys up in Greene just randomly up in Greene Correctional." Appellant Br. 29-30 (citation omitted). Fernandes replied, "[t]here you go, do it, do it." Id. at 30. The co-defendant said, "that's all I want to know," and Fernandes said, "[y]ep, fuck yeah, do it." Id. When his other co-defendant asked again whether he was ok with the plan, Fernandes replied, "[y]eah, yeah do that." Id.

Fernandes argues that he "may have had an interest in the outcome of" the plan to intimidate or harm a cooperating witness, but that "he did not actively participate in it being carried out." Id. His words, however, were enough. "In proscribing aiding and abetting, Congress used language that 'comprehends

3

all assistance rendered by words, acts, encouragement, support, or presence' . . . ." Rosemond, 134 S. Ct. at 1246 (quoting Reves v. Ernst & Young, 507 U.S. 170, 178 (1993)). Fernandes not only encouraged the crime, he authorized it. He may not have devised the plan or personally carried it out, but his co-defendant described it to him with the caveat "if it is alright with you"; and when Fernandes assented, the co-defendant said, "that's all I want to know." When his other co-defendant double-checked that the plan was acceptable to him, Fernandes said, "Yeah, yeah do that." His co-defendants proposed the crime and sought Fernandes's approval. He unambiguously provided it. Viewed in the light most favorable to the government, the evidence was easily sufficient for a reasonable jury to find Fernandes guilty of aiding and abetting witness tampering.[1]

**2.** We review sentences imposed by the district court for reasonableness, which includes procedural and substantive dimensions. Gall v. United States, 552 U.S. 38, 51 (2007). A district court errs procedurally when it fails to calculate or miscalculates the Sentencing Guidelines range, treats the Guidelines as mandatory, fails to consider the sentencing factors required by 18 U.S.C. § 3553(a), or does not adequately explain the sentence. Id. Substantive reasonableness is reviewed for abuse of discretion. Id.

Fernandes argues that a 240-month sentence (the statutory maximum) is substantively unreasonable for witness tampering, especially in light of the shorter sentences imposed on his co-defendants; and he argues that it is procedurally unreasonable because the district judge failed to explain it adequately. His arguments fundamentally misunderstand the role of the witness-tampering conviction in the sentence. Fernandes was not sentenced to 240 months on the witness tampering conviction alone; he was sentenced to a total term of 240 months for all eleven counts of conviction.

Under USSG § 3D1.2(c), counts of conviction are "grouped" together if one of them "embodies conduct that is treated as

---

[1] That the plan to intimidate the cooperating witness may not have been carried out the way Fernandes and his codefendants had discussed during the phone conversation is of no moment, as § 1512(b)(1) criminalizes attempted witness tampering.

a specific offense characteristic in, or other adjustment to, the guideline applicable to another" of them. That applies here because the guideline applicable to the drug counts includes a two-point offense-level increase if the defendant both receives an aggravating-role adjustment under § 3B1.1 (Fernandes did) and also "engaged in witness intimidation . . . or otherwise obstructed justice in connection with the investigation or prosecution of the offense." USSG § 2D1.1(b)(15)(D). Since the witness-tampering count is included as a specific offense characteristic of the drug counts, those counts are "grouped" together; and under USSG § 3D1.3(a), the offense level of the group is that of the highest offense level of the counts within it. In this case, that is the drug counts, which are driven by drug quantity and effectively "swallow" the witness-tampering count. The only effect of the latter is therefore the two-point offense-level increase, which resulted in no more than a one-point increase because the total offense level with the two-point increase was one point higher than the maximum possible 43.

In sum, the witness-tampering count brought the offense level to 43, resulting in a guidelines sentence of life imprisonment, rather than an offense level of 42 and a guidelines range of 360 months to life. The actual sentence imposed was a total term of 240 months on all counts--the statutory maximum sentence for the witness tampering count on its own, but a substantial downward departure in terms of the total sentence in either case. Fernandes has not shown any procedural error or substantive unreasonableness in that sentence.

**3.** Fernandes contends that the district court erred by finding a nexus between the crimes of conviction and the seized firearms pursuant to 18 U.S.C. §§ 924(d) and 3665, and that the order of forfeiture should be vacated. "Because criminal forfeiture is viewed as part of the sentencing process, the government need prove facts supporting forfeiture only by a preponderance of the evidence. We review the district court's factual findings for clear error and its legal conclusions de novo." United States v. Gaskin, 364 F.3d 438, 461-62 (2d Cir. 2004) (citations omitted).

At Fernandes's sentencing, the district court found by a preponderance of the evidence that his residence was used for the manufacture and distribution of methamphetamines; that all thirteen firearms that were seized from the residence were readily accessible and in close proximity to the drug trafficking operation;[2] that most were loaded; and that Fernandes would have a gun with him whenever an unknown person arrived. The firearms were in proximity to the manufacture and sale of methamphetamines and were visible to persons who entered the residence to purchase methamphetamines or to assist in its manufacture. "It is axiomatic that drug dealing and guns go hand in hand." United States v. Bermudez, 529 F.3d 158, 170 (2d Cir. 2008) (Underhill, J., concurring in part and dissenting in part). Even accepting as true Fernandes's argument that he used (at least some of) the weapons for skeet shooting or other sporting purposes, the district court's finding that all of the weapons were involved in and facilitated Fernandes's drug crimes was not clearly erroneous.

Accordingly, and finding no merit in appellant's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[2] As the district court explained, three of the firearms were located on a work bench in Fernandes's garage near numerous items related to the manufacturing of methamphetamines. Nine of the firearms were located in Fernandes's bedroom, which was the epicenter of the drug manufacturing activity. Of the firearms in the bedroom, one was leaning against the desk where the drugs were weighed and distributed, one was strapped to the side of that desk, and the others were visibly displayed on the back wall. The final firearm, which was seized during the execution of the second search warrant at Fernandes's home, was the weapon that Fernandes had taken with him when he fled the scene before law enforcement arrived to execute the first search warrant.