16-3890-cr
United States v. Munoz

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 19th day of March, two thousand nineteen.

Present:     RALPH K. WINTER,
             ROSEMARY S. POOLER,
                    *Circuit Judges*.
             RONNIE ABRAMS,[1]
                    *District Judge*.

_____

UNITED STATES OF AMERICA,

                            *Appellee*,

          v.                                                16-3890-cr

JOSE MUNOZ, FAHEEM TAYLOR,

                    *Defendants-Appellants.* [2]

_____

Appearing for Appellant:     Arnold J. Levine, New York, N.Y., *for Appellant Jose Munoz.*

Appearing for Appellee:      Michael K. Krouse, Assistant United States Attorney (Won S. Shin, Daniel B. Tehrani, Assistant United States Attorneys, *on the*

_____

[1] Judge Ronnie Abrams, United States District Court for the Southern District of New York, sitting by designation.

[2] The Clerk of Court is directed to amend the caption as above.

*brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Marrero, *J.*).

  **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

  Appellant Jose Munoz appeals from the November 7, 2016, judgment of the United States District Court for the Southern District of New York (Marrero, *J.*), sentencing him principally to seventy-five years of imprisonment following his conviction, after trial, of conspiracy to distribute and possess with intent to distribute crack cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, possessing, using, and carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. §§ 924(c)(1)(A)(i) and 2, murder in connection with a drug trafficking crime, 21 U.S.C. § 848(e)(1)(A); 18 U.S.C. § 2, using and carrying a firearm that was brandished and discharged during and in relation to a crime of violence (i.e., murder), 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(c)(1)(C)(i) and 2, murder through the use of a firearm during and in relation to a drug trafficking crime, *id.* §§ 924(j) and 2, conspiracy to commit Hobbs Act robbery, *id.* § 1951, Hobbs Act robbery, *id.* §§ 1951 and 2, and using and brandishing a firearm in relation to a crime of violence (i.e., Hobbs Act robbery), *id.* §§ 924(c)(1)(A)(ii), 924(c)(1)(C)(i) and 2. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

  Munoz attacks several of the district court's evidentiary rulings. "We review a district court's evidentiary rulings for abuse of discretion and will reverse only for manifest error." *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003) (citations omitted). "In conducting our review, we are mindful of the wide latitude that traditionally has been afforded to district courts both in determining whether evidence is admissible and in controlling the mode and order of its presentation to promote the effective ascertainment of the truth." *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 119 (2d Cir. 2006) (citations and internal quotation marks omitted). Moreover, we only disturb erroneous evidentiary rulings if they are not harmless. Fed. R. Crim. P. 52(a). "In order to uphold a verdict in the face of an evidentiary error, it must be 'highly probable' that the error did not affect the verdict. Reversal is necessary only if the error had a substantial and injurious effect or influence in determining the jury's verdict." *United States v. Dukagjini*, 326 F.3d 45, 61-62 (2d Cir. 2003) (citation and internal quotation marks omitted).

  Munoz argues that the government elicited impermissible hearsay testimony from a cooperating witness, Joshua Yorro, in which Yorro recounted how Munoz twice asked him not to testify—once through a jailhouse ventilation system and a second time through an intermediary. The first instance is not hearsay. Statements by an opposing party are excluded from the definition of hearsay. Fed. R. Evid. 801(d)(2)(A). That Yorro relied on a third party to tell him it was Munoz talking to him through the vents is of no moment. The third party's statements related to a preliminary foundational question—i.e., whether it was actually Munoz talking to

Yorro such that the statements were non-hearsay—to which the rules of evidence did not apply. *See* Fed. R. Evid. 104(a); *id.* 1101(d)(1).

Yorro's testimony regarding Munoz's second request for Yorro not to testify presents a double-hearsay question because it involves Munoz's out-of-court statements to an unnamed intermediary, as well as that intermediary's out-of-court statements to Yorro. *See* Fed. R. Evid. 805. As explained above, the first layer—Munoz's out-of-court statement—was admissible. Fed. R. Evid. 801(d)(2)(A). The government justifies the second layer—the statement by the intermediary to Yorro—on the theory that Munoz and the intermediary were part of an uncharged conspiracy to obstruct justice; therefore, the statement was admissible as a co-conspirator statement made in furtherance of that conspiracy. Fed. R. Evid. 801(d)(2)(E). Although we are skeptical that the government laid the proper foundation that the unnamed third-party intermediary conspired with Munoz to obstruct justice, we do not linger any longer on this issue because any error was harmless. Munoz himself testified on cross-examination that he did not want people to cooperate with the government and that he wanted to hurt cooperating witnesses. We are thus persuaded that Yorro's testimony in this regard did not have a "substantial and injurious effect or influence in determining the jury's verdict." *See Dukagjini*, 326 F.3d at 62 (internal quotation marks omitted).

Munoz further contends that the district court erred by allowing Yorro to testify about a telephone call he had with Jesse McCollum, a witness to Shameek Young's murder, shortly after the murder took place. Yorro testified that McCollum told him, in sum, that McCollum had recovered the gun Munoz used in the shooting, which Munoz had discarded, and that the entire incident could have been avoided if McCollum and Young had been warned that Munoz would be at the party where the murder took place. These statements were admissible as statements against McCollum's penal interest. Fed. R. Evid. 804(b)(3). "A statement may be admitted under Rule 804(b)(3)'s hearsay exception for statements against penal interest only if the district court determines that a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest." *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004). Here, while McCollum's statements could be understood as trying to place blame on Munoz, his statements also indicated that he was involved in a violent, drug-related dispute and that he possessed a firearm that had just been used as a murder weapon. Thus, they would clearly "be probative in a trial against" him. *See United States v. Persico*, 645 F.3d 85, 102 (2d Cir. 2011) (internal quotation marks omitted).

Munoz also challenges the admission of several post-arrest death threats the government introduced at trial to show Munoz's consciousness of guilt. Munoz relies heavily on our analysis in *United States v. Cummings*, in which we held that the admission of death threats made by one of Munoz's codefendants with whom Munoz was tried was sufficiently prejudicial to warrant a new trial. 858 F.3d 763, 779 (2d Cir. 2017). The statements at issue in *Cummings*, however, involved a hearsay problem not present in this case. *See id.* at 774. The analysis on which Munoz relies is our harmless error analysis, which we only undertook once we determined that the district court erred by admitting the hearsay testimony. *Id.* at 774-79. Here, Munoz's claim must rise or fall with our deferential review of the district court's balancing under Federal Rule of Evidence 403. We regard this as a close case but conclude that Munoz's claim falls.

"Evidence of threats by a defendant against a potential witness against him can . . . be used to show guilty knowledge" under Federal Rule of Evidence 404(b), so long as Rule 403's balancing test is satisfied. *United States v. Bein*, 728 F.2d 107, 114-15 (2d Cir. 1984). Under Rule 403, a district "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of" unfair prejudice. Fed. R. Evid. 403. "Ordinarily, unrelated death-threat testimony is kept from a jury because its potential for causing unfair prejudice outweighs its probative value with respect to a defendant's guilt." *United States v. Panebianco*, 543 F.2d 447, 455 (2d Cir. 1976). Because "the potential prejudice from death threats may be great," we require the government to "have an important purpose for the evidence in order to satisfy the Rule 403 balancing test." *United States v. Qamar*, 671 F.2d 732, 736 (2d Cir. 1982); *see also United States v. Morgan*, 786 F.3d 227, 232 (2d Cir. 2015).

The reason we regard this as a close case is because the only permissible purpose the government offered was to prove Munoz's consciousness of guilt. The threats "bore no relation to the offenses for which [Munoz] was being tried," were not "inextricably intertwined with the evidence regarding the charged offense," and were not "offered as evidence regarding a witness's credibility." *Cummings*, 858 F.3d at 778 (internal quotation marks omitted); *see also Morgan*, 786 F.3d at 232.

Moreover, in conducting the Rule 403 balancing, the district court reasoned that "the potential for unfair prejudice by presenting the threats at issue here [was] mitigated by the severity of the crimes alleged in the indictment." *United States v. Cummings*, 60 F. Supp. 3d 434, 440 (S.D.N.Y. 2014). However, the risk of prejudice here was not that the death threat evidence would be "inflammatory." *Id*. Rather, it was that the evidence would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). In other words, the risk was that the jury would misconstrue the death threats as evidence of murderous propensity. The district court's balancing did not seem to take that risk into consideration.

Nevertheless, we do not ordinarily require district courts to "articulate the relevant considerations" related to its evidentiary rulings "on the record." *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 269 n.11 (2d Cir. 1999). "[W]e ordinarily assume that such due consideration was given." *Morgan*, 786 F.3d at 232. Moreover, "[d]istrict courts have broad discretion to balance probative value against possible prejudice, and we will not disturb that balancing unless there is a clear showing of abuse of discretion or that the decision was arbitrary or irrational." *United States v. Bermudez*, 529 F.3d 158, 161-62 (2d Cir. 2008) (citations and internal quotation marks omitted). Here, in light of these deferential standards, we will not disturb the district court's ruling. On that score, the death threat testimony was arguably important to rebut Munoz's theory that he acted in self-defense—a purpose the government articulated to us at oral argument. We do not hold that rebutting a theory of self-defense is necessarily a purpose sufficiently important to overcome the significant prejudice that death threat testimony introduces into a criminal trial; instead, we conclude that this consideration weighs against finding that the district court abused its discretion in this case. Finally, unlike in *Cummings*, the prejudice from admitting this testimony was lessened by Munoz's own testimony that he wanted to hurt cooperating witnesses.

4

We do, however, urge district courts to continue to carefully scrutinize the necessity and purpose of such toxic death threat evidence before allowing it in to a criminal trial. And we likewise admonish the government to consider whether such testimony is truly needed to secure a conviction. The government may view this type of evidence as one more nail in the defendant's coffin, but by needlessly introducing it, the government invites the risk of reversal on appeal, requiring it to reconstruct its entire case—an outcome it has narrowly avoided in this case.

Munoz also argues that the district court impermissibly instructed the jury that he had a motive to testify falsely. "We generally review challenged jury instructions *de novo*, reversing only if the charge, taken as a whole, was prejudicial." *United States v. Brutus*, 505 F.3d 80, 85 (2d Cir. 2007). Moreover, we will find that an erroneous jury charge is harmless error "if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Silver*, 864 F.3d 102, 119 (2d Cir. 2017) (internal quotation marks omitted).

A "trial court's jury instructions about a defendant's testimony must not assume that he is guilty." *United States v. Gaines*, 457 F.3d 238, 246 (2d Cir. 2006). Thus, a trial court may not "tell[] a jury that a testifying defendant's interest in the outcome of the case creates a motive to testify falsely." *Id*. Because "[t]he critical defect in a jury instruction that says the defendant has a motive to lie is its assumption that the defendant is guilty," *id.* at 247, prejudicial language that runs afoul of our prophylactic rule cannot be cured "by other, more favorable language," *Brutus*, 505 F.3d at 87; *see also Gaines*, 457 F.3d at 246-47. We have therefore directed district courts to include any instruction about "a witness's interest in the outcome of the case . . . in the court's general charge concerning witness credibility," modifying the charge as necessary to "tell the jury to evaluate the defendant's testimony in the same way it judges the testimony of other witnesses." *Gaines*, 457 F.3d at 249.

Here, the district court instructed the jury, as part of its general jury instructions, "In evaluating credibility of the witnesses, you should take into account any evidence that any witness who testified may benefit in some way from the outcome of the case. *Such an interest in the outcome creates a motive to testify falsel*y and may sway a witness to testify in a way that advances his or her own interests." Trial Tr. 2290:14-19 (emphasis added). It continued, "You should not disregard or disbelieve that testimony simply because a witness had or has such an interest, but if you accept it, you should do so with great care." Trial Tr. 2290:22-25. The district court further instructed that "Defendant Jose Munoz chose to testify in this case. You should examine or evaluate the his [sic] testimony *just as you would the testimony of any witness with an interest in the outcome of the case*." Trial Tr. 2294:7-10 (emphasis added).

The logical implication of the district court's instructions is that Munoz had a motive to testify falsely: if "an interest in the outcome creates a motive to testify falsely," Trial Tr. 2290:16-17, and jurors should assess Munoz's testimony as a "witness with an interest in the outcome of the case," Trial Tr. 2294:8-10, then Munoz had an interest in the outcome of the case that created a motive to testify falsely. Thus, the district court did indirectly what we said in *Brutus* and *Gaines* district courts cannot do directly: tell the jury that a criminal defendant who testifies has a motive to testify falsely. While the district court did heed our admonition to discuss a "a witness's interest in the outcome of the case . . . in the court's general charge

5

concerning witness credibility," *Gaines*, 457 F.3d at 249, the instruction also skirted the spirit of *Brutus* and *Gaines*. Nevertheless, because the interested witness instruction and the instruction regarding Munoz's testimony were separated in the overall charge, we are hesitant to say that the jury "charge, taken as a whole, was prejudicial." *Brutus*, 505 F.3d at 85. Moreover, any error here was harmless. We are convinced that the evidence that Munoz intentionally killed Young—including, for example, the medical examiner's testimony that Young was shot in the back and the video footage showing Munoz shooting Young—was so substantial that the jury would have convicted him absent any error in the jury charge.

The lack of reversible error in this case notwithstanding, we renew our direction to district courts to excise from jury charges any instruction indicating that a criminal defendant who testifies has a motive to testify falsely. We again refer district courts to the language we approved in footnotes in *Brutus* and *Gaines*. *Brutus*, 505 F.3d at 88 nn.6 & 7; *Gaines*, 457 F.3d at 249 nn.8 & 9.

We have considered the remainder of Munoz's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk